IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 5, 2009 Session

**JAMES P. GRIFFITH, ET AL. v. JELLICO COMMUNITY HOSPITAL, INC.**

**Appeal from the Circuit Court for Campbell County**
**No. 13324     John D. McAfee, Judge**

**No. E2009-01431-COA-R3-CV - FILED MAY 28, 2010**

Employee, whose employer provided services pursuant to a contract with hospital, sustained injuries from a fall while working on hospital's premises. Employee subsequently filed a negligence action against hospital. The trial court permitted employer to intervene in the suit. Hospital filed a motion for summary judgment, and after an evidentiary hearing, the trial court found that hospital was the principal contractor pursuant to Tenn. Code Ann. § 50-6-113 and the exclusive remedy rule barred employee's negligence suit. The trial court granted summary judgment in favor of hospital, and employee appealed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Jay E. Kohlbusch, Knoxville, Tennessee, for the appellants, James P. Griffith and Kimberly Griffith.

Daniel T. Swanson, Knoxville, Tennessee, for the appellee, Jellico Community Hospital, Inc.

Robert J. Uhorchuck, Chattanooga, Tennessee, for the appellee, Aramark Clinical Technology Services, Inc.

**OPINION**

**I. BACKGROUND**

In October 2001, Jellico Community Hospital, Inc. ("Jellico") contracted with Premier Technology Management to provide management and technical services for Jellico's

biomedical equipment ("the Agreement").  Aramark Clinical Technology Services, Inc. ("Aramark") subsequently purchased Premier Technology Management and continued to provide services to Jellico.  James Griffith ("Griffith"), an employee of Aramark, was assigned as the on-site biomedical equipment technician to Jellico pursuant to the Agreement.

On January 25, 2006, Griffith was injured while helping a Jellico employee unload furniture from a truck.  Griffith fell off the truck and sustained injuries to his back and pelvis.  Thereafter, Aramark paid workers' compensation benefits to Griffith for temporary total disability, permanent partial disability, and medical expenses.  Griffith and his wife, Kimberly, then filed this action against Jellico, alleging negligence.  After Griffith filed the Complaint, Aramark obtained an order allowing it to intervene to protect its subrogation interest under Tenn. Code Ann. § 50-6-112.[1]  In the Answer, Jellico denied any negligence on its part.

Jellico filed a motion for summary judgment asserting that it was a "principal contractor" pursuant to Tenn. Code Ann. § 50-6-113 thereby entitling it to immunity from tort liability under the exclusive remedies provision of Tenn. Code Ann. § 50-6-108. During a hearing on April 7, 2008, the parties disputed whether Jellico's principal contractor status was an issue of fact or law.  The parties agreed to an evidentiary hearing to decide the issue.  The trial court denied Jellico's motion to determine what, if any, facts were in dispute as to Jellico's status as a principal contractor.

On July 8, 2008, the parties appeared for the evidentiary hearing.  Aramark refused to proceed claiming that there were facts in dispute that should be decided by a jury.  In light of this, the trial court instructed the parties to exchange statements of fact to determine whether there were any material facts in dispute concerning Jellico's status.

After the parties filed statements of fact, Jellico renewed its motion for summary judgment.  After a hearing on March 9, 2009, the trial court determined that Jellico was the principal contractor under Tenn. Code Ann. § 50-6-113 and Griffith's statutory employer.  The trial court found that the services provided by Aramark were a part of Jellico's regular business.  In granting summary judgment in favor of Jellico, the trial court held that as a statutory employer, Jellico was immune from tort liability to Griffith because of the exclusive remedy rule.

Griffith then filed this appeal contending that summary judgment was inappropriate because there are material facts in dispute.  Specifically, he asserts that as the moving party, Jellico did not establish without factual controversy that either:  (1) it retained the right of

---

[1]Aramark also joined this appeal by filing a brief and stating that it completely adopted the position of the Griffiths on appeal.

control over Griffith's work; (2) it conducted its regular business and Griffith's work was within its regular business; or (3) it employed individuals performing the same type of work as Griffith.

## II.  ISSUE PRESENTED

The sole issue presented for review is:

Whether the trial court erred in granting summary judgment in favor of Jellico.

## III.  STANDARD OF REVIEW

On appeal, we review the trial court's findings of fact with a presumption of correctness and will not disturb a trial court's factual findings unless the evidence preponderates against them.  *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  In reviewing a trial court's grant of a motion for summary judgment, this court must determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000).  Our inquiry involves only a question of law with no presumption of correctness attached to the trial court's judgment. *Id.*  Under Tenn. R. Civ. P. 56.04, "[s]ummary judgment is appropriate when the moving party can show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law."  *Hannan v. Alltel Publ'g*, 270 S.W.3d 1, 5 (Tenn. 2008) (citing Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993)).  In Tennessee, the moving party who does not bear the burden of proof at trial must either:

(1)     affirmatively negate an essential element of the nonmoving party's claim; or

(2)     show that the nonmoving party cannot prove an essential element of the claim at trial.

*Hannan*, 270 S.W.3d at 9.  A "conclusory assertion" is not enough to shift the burden. *Id.* at 5 (quoting *Byrd*, 847 S.W.2d at 215).  It is also not enough for the moving party to "cast doubt on a party's ability to prove an element at trial."  *Hannan*, 270 S.W.3d at 8.

Therefore, a properly supported motion for summary judgment demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law.  *See Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *see also Staples*, 15 S.W.3d at 88; *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).  If the moving party fails to make a properly supported motion, the non-movant's

burden to produce either supporting affidavits or discovery materials is not triggered, and the motion for summary judgment fails. *See Martin*, 271 S.W.3d at 83. If the moving party makes a properly supported motion, then the non-moving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Id.* at 84 (supporting citations omitted).

## IV. DISCUSSION

The Tennessee Workers' Compensation Act allows an employee, injured in an accident while in the course and scope of employment, to recover workers' compensation benefits from the employer. *See, e.g.,* Tenn. Code Ann. § 50-6-103 (2008). The exclusive remedy provisions contained in Tenn. Code Ann. § 50-6-108, bars any other or additional recovery that an injured employee may seek against the employer.[2] *See* Tenn. Code Ann. § 50-6-108 (2008). Nonetheless, an injured employee may file suit and seek damages from another party other than the employer under Tenn. Code Ann. § 50-6-112.[3] Determining coverage under the Act depends primarily on the existence of an employer-employee relationship. *See Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 175 (Tenn. 2001).

Under Tenn. Code Ann. § 50-6-113, a principal contractor may be liable for workers' compensation benefits to an employee injured while in the employ of a subcontractor.[4] Because the principal contractor may be held liable for workers' compensation benefits to the subcontractor's employee, the principal contractor is considered a statutory employer and is immune from a tort action brought by an injured employee to the same extent as the subcontractor under the exclusive remedy rule. *Campbell v. Dick Broadcasting Co., Inc.*, 883 S.W.2d 604, 606 (Tenn. 1994). The Act creates "statutory employers" in circumstances where "injured employees are unable to recover compensation from their immediate

---

[2]"The rights and remedies granted to an employee subject to this chapter, on account of personal injury or death by accident, including a minor whether lawfully or unlawfully employed, shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death." Tenn. Code Ann. § 50-6-108(a).

[3]"When the injury or death for which compensation is payable under this chapter was caused under circumstances creating a legal liability against some person other than the employer to pay damages, the injured worker, or the injured worker's dependents, shall have the right to take compensation under this chapter, and the injured worker, or those to whom the injured worker's right of action survives at law, may pursue the injured worker's or their remedy by proper action in a court of competent jurisdiction against the other person." Tenn. Code Ann. § 50-6-112(a) (2008).

[4]"A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any subcontractors of the principal contractor, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer." Tenn. Code Ann. § 50-6-113(a) (2008).

employers." *Goodyear Tire & Rubber Co.*, 46 S.W.3d at 175. The statute's aim is to ensure that workers will receive compensation due to injuries arising from their employment. *See Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 951 (Tenn. 1985) (citations omitted).

In Tennessee, a court will find that a company is a principal contractor if it satisfies one of three tests. "Generally, a company is considered a principal contractor if: (1) the company undertakes work for an entity other than itself; (2) the company retains the right of control over the conduct of the work and the subcontractor's employees; or (3) the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees." *Lindsey v. Trinity Communications, Inc.*, 275 S.W.3d 411, 421 (Tenn. 2009) (citing *Goodyear Tire & Rubber Co.*, 46 S.W.3d at 176; *Stratton*, 695 S.W.2d at 951-52).

The first two tests do not apply to this case. First, it is undisputed that Jellico did not undertake work for another entity. Second, the trial court specifically found that Jellico did not retain the right of control over Aramark's employees because ". . .they [Jellico] weren't exercising the right to dictate to this employee as to how to maintain or what to do in reference to this equipment. . . ." Affording a presumption of correctness to the trial court's factual findings, we will not disturb those factual findings unless the evidence preponderates against them. *See Randolph v. Eastman Chem. Co.*, 180 S.W.3d 552, 554 (Tenn. Ct. App. 2005) (citations omitted).

To determine whether a company retained the right of control, courts analyze whether an employer-employee relationship exists. *Stratton*, 695 S.W.2d at 950. When analyzing whether an employer-employee or independent contractor relationship exists, we consider six factors, with no one factor being dispositive. *Id.* As outlined by our Supreme Court in *Stratton*, the factors include: "(1) right to control the conduct of work; (2) right of termination; (3) method of payment; (4) whether alleged employee furnishes his own helpers; (5) whether alleged employee furnishes his own tools; and (6) whether one is doing 'work for another'." *Id.* (citations omitted); *see also Barber v. Ralston Purina*, 825 S.W.2d 96, 99 (Tenn. Ct. App. 1991) (relying on the above factors to find that company was the statutory employer based on "the right to control the conduct of plaintiff's work. . . .").

In the instant case, Pamela Hodge, Risk Manager and Chief Nursing Officer at Jellico, testified in her supplemental deposition that Griffith was a "contract employee" and that Jellico did not issue Griffith's payroll checks. Ms. Hodge's testimony also revealed that Griffith was the only employee working on biomedical equipment at Jellico. In his affidavit, Griffith averred that Aramark was his employer, and that Jellico did not have the power to terminate his employment with Aramark. He also testified that "[Jellico] did not furnish my

tools nor did they schedule my work hours." Describing his job duties at Jellico, Griffith stated:

> . . . I was to do all courtesy work I could for [Jellico] in order to keep that customer happy and so as to not jeopardize the service contract that existed between Aramark and [Jellico] . . . .[W]hatever such courtesy services did not interfere with my primary duties as a technician working on medical equipment at [Jellico], I tried to assist employees of Jellico Community Hospital in anything that he or she may ask me to do so as to establish and maintain good will between my employer, Aramark and the customer Jellico. . . . However, at no time was I under direction or control of employees of Jellico.

Applying the relevant factors to this case, we conclude that Jellico did not retain the right to control Griffith's work. Jellico did not maintain the right to terminate, issue payroll checks, nor provide the necessary tools for the maintenance of the biomedical equipment. We agree with the trial court's finding.

Nevertheless, it is not a prerequisite that a court finds a company had the right of control in order to find that it is a statutory employer under Tenn. Code Ann. § 50-6-113. *See Randolph*, 180 S.W.3d at 560 (finding that plaintiff's work was part of the regular business of the defendant and the issue of whether the defendant had the right of control is pretermitted); *Agarwal v. Tennessee Valley Auth.*, No. 1:04-CV-370, 2005 WL 2219113, at *6 (E.D. Tenn. Sept. 12, 2005) (noting if defendant fails the first test, defendant still may be considered a "statutory employer" based upon "right of control"). In summary, a company can demonstrate that it is a "statutory employer" under either test. *Goodyear*, 46 S.W.3d at 176; *Randolph*, 180 S.W.3d at 560, f.n. 4.

Therefore, the determinative issue of this appeal hinges on whether Griffith's work was a part of Jellico's regular business. Relying heavily on the Tennessee Supreme Court's recent decision in *Lindsey v. Trinity Communications, Inc.*, Griffith maintains that Jellico is not the statutory employer because Griffith's work was not a part of Jellico's regular business.

In *Lindsey*, Trinity Communications, a cable television provider, contracted with Broadband Specialists for the installation of the cable system in Marion County. *Id.* at 415. Thereafter, Broadband subcontracted a portion of the project to HFC Services, who hired the plaintiff to splice cable for the installation. *Id.* The plaintiff was injured while splicing cable. *Id.* Because HFC, the plaintiff's primary employer, did not have workers' compensation insurance, the trial court concluded that both Trinity and Broadband were the

plaintiff's statutory employers. *Id.* at 416. Trinity, arguing that it was not the statutory employer under section 50-6-113(a), appealed the trial court's finding.[5] *Id.* In reversing the trial court's finding, the Tennessee Supreme Court held that Trinity was not the plaintiff's statutory employer because it "did not retain a right of control over the project, did not perform new system construction as a regular part of its business, and did not have employees who routinely performed such construction. . . ." *Id.* at 423. The Court reasoned:

> A company who routinely contracts out more extensive repairs and maintenance projects and whose employees only occasionally perform "small maintenance tasks" is not a principal contractor. In this case, Trinity's practice was to contract out new system construction. Hunter testified that at the time of Lindsey's injury, Trinity's employees were incapable of performing the same type of work as Broadband and HFC.

*Id.* (citation omitted). The Court explained that determining whether a company is a statutory employer is a "fact specific inquiry, relative to the size and scope of the business." *Id.* at 422. Therefore, due to the "small size and limited number of employees," the installation of the new system could not be "a regular part of [Trinity's] business." *Id.* (citing *Goodyear*, 46 S.W.3d at 177 (holding that a painting job was not a regular part of the business because it was more extensive and specialized than a regular maintenance project)).

Griffith and Aramark contend that the services provided through the Agreement concern the maintenance, repair, and calibration of biomedical equipment. They contend that it is specialized work that is not a part of Jellico's regular business and none of Jellico's employees perform such work. According to Griffith and Aramark, Jellico cannot be the statutory employer because Jellico does not have employees that perform the same type of work as Aramark. In light of the Court's decision in *Lindsey* and the specialized nature of the work provided by Aramark to Jellico, they contend, at the very least, there is a dispute in material facts concerning whether the services provided by Aramark constitute the regular business of Jellico. We disagree.

At first blush, it appears that Griffith and Aramark advance a compelling argument. However, after a closer review of our Supreme Court's decision in *Lindsey* and other relevant case law, their argument fails. Their argument ignores the factual distinctions between the case at bar and the facts of *Lindsey*.

_____

[5]Broadband did not challenge the trial court's finding that it was a statutory employer. *Lindsey*, 275 S.W.3d at 421, f.n. 4. However, Broadband's workers' compensation insurance carrier, Texas Mutual Insurance Company, appealed the trial court's decision for multiple reasons including want of personal and subjection matter jurisdiction. *Id.* at 416.

In the case at bar, the trial court determined that Jellico was Griffith's statutory employer because his work was a part of Jellico's regular business. Specifically, the trial court found that "because of the regulations concerning the licensing of this hospital, they have to keep someone there. . .to maintain the equipment. And therefore, it is in the regular course of their business." Jellico's business consists of providing medical care to its patients. In an affidavit, Ms. Hodge described Jellico's services to include "diagnostic testing, evaluation and treatment of its patients through the use of biomedical equipment" and that "[t]he use of biomedical equipment is necessary and essential to Jellico Community Hospital's business of providing medical care to its patients." Ms. Hodge further testified that the Agreement covered at minimum 700 pieces of equipment at Jellico, including but not limited to:

> [U]ltrasound machines, mammography units, x-rays, collimators, generators, monitors, gastroscopes, broncoscopes, endoscopes, oximeters, thermometers, glucose analyzers, patient beds, infusion pumps, defibrillators, vaporizers, ventilators, opthalmoscopes, incubators, telemetry, anesthesia machines, microscopes, spirometers, autoclaves, electroencephalography units (EEG), electrocardiogram units (EKG), oscilloscopes, pacemakers, centrifuges, aspirators, audioscopes, nebulizers, Doppler units.

The Agreement provided that Aramark would assume responsibility for the upkeep of Jellico's biomedical equipment.

In particular, the Agreement outlines Aramark's obligations concerning the biomedical equipment. Pursuant to the Agreement, Aramark assumed responsibility for the following services: (1) monitoring equipment for safety and proper performance in accordance with industry standards; (2) providing systems for documentation of testing according to the schedule provided by healthcare regulating agencies, (3) arranging for the repair of equipment as reasonably requested by Jellico; (4) providing planned maintenance inspections when scheduled and safety testing as needed; and (5) assisting in compliance with current biomedical safety regulations and standards.

To operate as a hospital, Jellico must hold a license from the State.[6] Holding a license in Tennessee as a general hospital requires Jellico to comply with state regulations mandated by the Tennessee Department of Health.[7] Ms. Hodge attested to both state and federal

---

[6]"No person, partnership, association, corporation, or state, county or local government unit, or division, department, board or agency thereof, shall establish, conduct, operate, or maintain in the State of Tennessee any hospital without having a license." Tenn. Comp. R. & Regs. 1200-08-01-.02 (2009).

[7]"To be licensed as a general hospital, the institution shall maintain and operate organized facilities
(continued...)

-8-

regulations in her deposition and affidavit, and she testified that Jellico relied on Aramark's services in order to comply with those regulations.[8] Principally, both the federal and state regulations direct a hospital offering radiological services to satisfy specific requirements. One of those requirements includes:

> Periodic inspections of equipment must be made and hazards identified must be promptly corrected.

*See* 42 C.F.R. § 482.26(b)(2) (2009); *see also* Tenn. Comp. R. & Regs. 1200-08-01-.06(7)(d) (2009). Jellico also offers services in nuclear medicine; under the State Standards for Hospitals, nuclear medical equipment must be:

> 1. Maintained in safe operating condition; and
>
> 2. Inspected, tested, and calibrated at least annually by qualified personnel.

Tenn. Comp. R. & Regs. 1200-08-01-.07(3)(h) (2009).

---

[7](...continued)
and services to accommodate one or more non-related persons for a period exceeding twenty-four (24) hours for the diagnosis, treatment or care of such persons and shall provide medical and surgical care of acute illness, injury or infirmity and obstetrical care. All diagnosis, treatment and care shall be administered by or performed under the direction of persons currently licensed to practice the healing arts in the State of Tennessee. In addition, a general hospital must specifically provide:
1. An organized staff of professional, technical and administrative personnel.
2. A laboratory with sufficient equipment and personnel necessary to perform biochemical, bacteriological, serological and parasitological tests.
3. X-ray facilities which shall include, as a minimum requirement, a complete diagnostic radiographic unit.
4. A separate surgical unit which shall include, as minimum requirements, one operating room, a sterilizing room, a scrub-up area and workroom.
5. Obstetrical facilities which shall include, as minimum requirements, one delivery room, a labor room, a newborn nursery, an isolation nursery, and patient rooms designated exclusively for obstetrical patients.
6. An emergency department in accordance with rule 1200-08-01-.07(5) of these standards and regulations." Tenn. Comp. R. & Regs. 1200-08-01-.01(38)(a) (2009).

[8] Regarding federal regulations, Ms. Hodge referenced the requirements of the Medicare/Medicaid program for hospitals offering radiological, laboratory, and surgical service. She testified that over 50% of Jellico's patients "are on Medicare or Medicaid. Loss of Medicare/Medicaid approved provider status would result in a loss of a substantial percentage of business." The specific requirements can be found at 42 C.F.R. § § 482.26, 482.27 , and 482.51.

The State's standards governing hospitals regulate the mode and manner in which Jellico provides services to patients. *See generally* Tenn. Comp. R. & Regs. 1200-08-01-.07(m) and Tenn. Comp. R. & Regs. 1200-08-01-.06(8)(a). Further, in order to continue its accreditation with the Joint Commission on Accreditation with Healthcare Organizations ("JCAHO"), Jellico relied on Aramark's servicing of the biomedical equipment.[9] Therefore, to meet state and federal standards and to ensure the safe treatment and diagnosis of patients, Jellico contracted with Aramark for the repair, maintenance, and calibration of the equipment used for patient care. Because the proper and safe operation of the equipment is essential to Jellico's business of providing health care, we find the trial court properly determined that Griffith's work was part of Jellico's regular business.

The instant case is similar to *Randolph v. Eastman Chem. Co.*. In *Randolph*, a worker, the employee of a subcontractor, was injured while working at the defendant company's premises. 180 S.W.3d at 553. The defendant company did not have the technology to conduct electromagnetic testing and it contracted that project to the worker's employer – the subcontractor. *Id.* at 555. After finding that the company was the worker's statutory employer, the trial court granted summary judgment and dismissed the worker's tort suit. *Id.* at 554. On appeal, the worker argued, like Griffith in this case, that the company could not be considered his "statutory employer" because the company lacked the technology for its employees to perform the same type of work. *Id.* at 558. Distinguishing our Supreme Court's decision in *Goodyear*, this court rejected the worker's argument because:

> Unlike the painting of the duct in *Goodyear*, the evidence in the present case demonstrates that the work performed during a shutdown must be done on a continual basis i.e. every two years, in order for the plant to operate properly, effectively, and in compliance with applicable safety regulations.

*Id.* Key to the reasoning in *Randolph* was the continual nature of the work performed by the subcontractor's employee.

In this case, although Griffith was the only biomedical equipment technician working at Jellico, he performed his duties on a daily and continual basis. Ms. Hodge explained that Griffith's work was perpetual because:

---

[9]The Agreement specifically references the safety testing of the equipment based on the intervals provided by JCAHO. Section 3.7(c) states: "Provide planned maintenance inspections when scheduled and safety testing as needed. . . . [Aramark's] planned maintenance program includes preventative maintenance and routine safety testing and systems performance verification. Test intervals are established based on requirements outlined by the manufacturer of the applicable equipment, JCAHO and the critical function of the items of equipment."

-10-

[I]t was a daily – there's so much equipment that has to be maintained. And to do the preventive maintenance, that is a continual thing that somebody has to work at. There's so many pieces of equipment.

Without safe and functioning biomedical equipment, Jellico would not be able to conduct its business as a hospital. In contrast to *Lindsey*, where a small company contracted out a major construction project, Jellico, as a hospital, depended on the contracted work with Aramark to ensure that it: complies with Tennessee Licensure requirements; maintains its status as an approved health care provider under Medicare and Medicaid; keeps its accreditation; and provides safe services to patients. Griffith's argument fails because it ignores the continual nature of the services provided by Aramark. Furthermore, Griffith's argument does not account for the connection between the maintenance of the biomedical equipment to Jellico's basic functions as a general hospital.

As this court found in *Randolph*, the decision in *Lambert v. Tennessee Valley Auth.*, No. 1:01-CV-330, 2002 WL 32059747 (E.D. Tenn. Sept. 17, 2002) is instructive.[10] In *Lambert*, a subcontractor's employee was injured while performing maintenance work on an ice-blowing auger at a TVA nuclear power plant. 2002 WL 32059747, at*1. The injured employee filed a negligence suit; the primary issue was whether the exclusive primary rule barred the suit. *Id.* The district court held that TVA was the principal contractor under Tenn. Code Ann. § 50-6-113 because the employee's maintenance work was part of TVA's regular business and of the type of work usually performed by TVA employees. 2002 WL 32059747, at *4-5. In explaining its decision, the court reasoned:

> As part of its operation of nuclear power plants, TVA routinely and continuously engages in modification and maintenance services on its facilities. Regular maintenance and repair work are an inherent part of carrying on the enterprise of operating nuclear power plants.

2002 WL 32059747, at *4.

Similarly, in the case at bar, having a biomedical equipment technician that works daily, like Griffith did, is inherent to the operation of Jellico as a hospital. Due to the nature of Jellico's business – providing medical care – routine maintenance and repair of biomedical equipment is critical to patient safety. Jellico consistently contracts out the maintenance and repair of their biomedical equipment. In fact, Ms. Hodge testified that after Griffith's injury, another biomedical equipment technician filled in to perform Griffith's former duties, and that a biomedical equipment technician consistently works at Jellico. At summary judgment,

---

[10]In *Randolph*, this court noted that the *Lambert* decision was not binding but found the reasoning persuasive. 180 S.W.3d at 560.

as the moving party, Jellico had the burden of showing without factual controversy that it is Griffith's statutory employer. Through the exhibits of the applicable state and federal regulations, the Agreement, and Ms. Hodge's testimony, Jellico demonstrated that no material facts were in dispute and that it was entitled to summary judgment as a matter of law. After doing so, Jellico triggered Griffith's burden to show that material facts were in dispute. However, Griffith did not sustain his burden. Griffith did not produce any evidence challenging Jellico's proof – proof that established the essential nature of a biomedical equipment technician's work to Jellico's operation. If we were to accept Griffith's argument that his work was not a part of Jellico's regular business, we would have to overlook the importance of maintaining safe biomedical equipment to the treatment and diagnosis of patients.

Accordingly, we affirm the trial court's grant of summary judgment in favor of Jellico. We conclude that Jellico is Griffith's statutory employer because his work as a biomedical equipment technician was an essential and regular part of Jellico's business as a general hospital. The trial court correctly determined that Jellico was a principal contractor under Tenn. Code Ann. § 50-6-113 and properly dismissed Griffith's negligence claim under the exclusive remedy rule contained in Tenn. Code Ann. § 50-6-108.

## V. CONCLUSION

The judgment of the trial court is affirmed in its entirety, and this cause is remanded to the trial court for collection of the costs below. Costs on appeal are assessed one-half against Appellants, James Griffith and Kimberly Griffith and one-half against Appellee, Aramark Clinical Technology Services, for which execution may issue, if necessary..

_____
JOHN W. McCLARTY, JUDGE

-12-