IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 4, 2001 Session

## JERRY WAYNE MURRAY  v.  GOODYEAR TIRE & RUBBER COMPANY

Appeal from the Chancery Court for Obion County
No. 17,914     Hon. W. Michael Maloan, Chancellor

No. W2000-00137-SC-R3-CV - Filed May 16, 2001

The sole issue presented for review is whether the defendant, at the time of the plaintiff's accident, was the plaintiff's statutory employer as defined by Tennessee Code Annotated section 50-6-113, and therefore liable for workers' compensation benefits.  The defendant contracted with the plaintiff's employer for the painting of overhead air ducts in its plant.  Subsequently, the plaintiff was injured when he fell from one of these ducts.  The trial court determined that the degree of control exercised by the defendant established the defendant as a statutory employer pursuant to the Act.  The defendant appealed.  The appeal was argued before the Special Workers' Compensation Appeals Panel pursuant to Tennessee Code Annotated section 50-6-225(e), but was transferred to the full Supreme Court prior to the Panel issuing its decision.  On appeal, we reverse the judgment of the trial court, holding that the evidence preponderates against the trial court's finding that the defendant is a statutory employer and that therefore, the defendant is not liable for compensation benefits.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Randy N. Chism, Union City, Tennessee, for the appellant, Goodyear Tire & Rubber Company.

Kyle E. Crowe, Martin, Tennessee, for the appellee, Jerry Wayne Murray.

**OPINION**

# BACKGROUND

In November 1992, Goodyear Tire & Rubber Company ("Goodyear") started an extensive project of cleaning and painting the overhead air ducts in its Union City plant. Although Goodyear employees are sometimes required to perform minor maintenance tasks, including some painting of the facility, Goodyear considered this project of painting the overhead duct work in the rafters of the plant a "specialized" project involving "special paint and special equipment [and] special techniques." Goodyear neither had the employees qualified to do the job, nor the materials and equipment necessary to paint the overhead ducts. Consequently, per company policy, a description of the job specifications was submitted to the appropriate union representative for approval to obtain a professional painter to complete the project. The union representative agreed that the painting job required professional expertise, and he approved the contracting of the job to an outside painter.

Accordingly, Goodyear entered into a series of contracts, or "purchase orders," with Billy Joe McCord, a self-employed painter who had worked on a contract basis with Goodyear for approximately fifteen years. Negotiations occurred solely between Goodyear and Mr. McCord. Each purchase order specified the cost of labor and materials necessary to paint the number of units apportioned in that order. Once a job was completed according to Goodyear's specifications, a new purchase order was entered into for another set of units.

In this manner, the parties entered into the purchase order at issue in this case on March 17, 1993, for the painting of four ducts. This order specifically required Mr. McCord to obtain liability insurance for bodily injury and property damage, which he failed to do.[1] The only other specifications in this order required Mr. McCord to perform all work in accordance with Goodyear's fire and safety regulations, applicable to everyone who worked in the building, and to paint only during "nonproduction" times, that is, primarily on Sundays when the tire presses were not in

---

[1] The order stated:

Seller [Billy Joe McCord] shall carry public liability insurance with limits that are at least the equivalent of a combined bodily injury and property damage single limit of $1,500,000 per occurrence, . . . and shall have purchaser [Goodyear] named as an additional insured thereon. Such insurance shall be deemed to be the primary liability coverage for all purposes hereof and seller shall furnish purchaser acceptable evidence of such insurance before commencing work hereunder.

At trial, Mr. McCord explained that he was to obtain workers' compensation insurance or other liability insurance only if he had *employees* working for him; he maintained, however, that Jerry Wayne Murray, the injured claimant in this case, was not an employee but was an "independent painting contractor." Therefore, Mr. McCord believed that this clause did not apply to him. The trial court disagreed and found that Mr. McCord and Mr. Murray had entered into an employer-employee relationship.

operation.[2]  Goodyear employees periodically supervised the painters to ensure that all were in compliance with safety regulations.

Otherwise, the record reflects that Mr. McCord provided the materials and equipment necessary to paint the overhead duct work, although Goodyear supplied drop-cloths and tarpaulins to cover the floor, tires, and machines.[3]  He hired additional painters to assist him, including the claimant, Jerry Wayne Murray–the plaintiff in this case, and paid them an hourly wage.  The evidence is also undisputed that Mr. McCord directed the painting methods and scheduled his employees' hours within the time frame established by Goodyear.

On March 21, 1993, Mr. Murray was severely injured when the air duct that he was painting collapsed, causing him to fall approximately eighteen feet to the concrete floor.  As a result of this fall, Mr. Murray suffered substantial permanent physical impairment, was unable to work for almost eighteen months, and incurred almost $17,000 in medical expenses.

Mr. Murray filed a workers' compensation claim against Mr. McCord, his immediate employer; against Goodyear, his alleged statutory employer under Tennessee Code Annotated section 50-6-113; and against the Tennessee Department of Labor Second Injury Fund.  The trial court dismissed the action against Mr. McCord because he lacked the requisite minimum five regular employees to fall within the purview of the Workers' Compensation Act.  See Tenn. Code Ann. § 50-6-106(4)(1999) (exempting employers with fewer than five persons regularly employed from the operation of the Workers' Compensation law).[4]  However, the trial court found that because Goodyear "exercised a sufficient degree of control over the work," a statutory employment relationship existed between Mr. Murray and Goodyear.  Goodyear appealed pursuant to Tennessee Code Annotated section 50-6-225(e), arguing before the Special Workers' Compensation Appeals Panel that the evidence preponderates against the finding that Goodyear was the claimant's statutory employer at the time of the accident.  The appeal was transferred to the full Supreme Court prior to the Panel issuing its decision.

## ANALYSIS

---

[2]  The reason for this requirement was to prevent paint from getting on the tires and tire presses.  There was evidence that if paint fell onto a tire, that tire was ruined and became scrap material.  Similarly, if paint fell on a tire press, conceivably every tire that went through that press would be ruined, resulting in financial losses from the damaged tires and lost production time when the presses would have to be shut down and cleaned.

[3]  The record indicates that Goodyear supplied a forklift, operated by one of its own employees, in November 1992 to lift a painter to the overhead ducts.  However, the evidence is undisputed that Goodyear did not provide any of its own equipment pursuant to the March 17 purchase order.

[4]  Although the record is unclear as to exactly how many employees Mr. McCord hired over the duration of the project, the trial court correctly concluded that section 50-6-106(4) requires an employer to have five or more persons *regularly employed*.  Because this fact was not demonstrated by the evidence, the trial court properly dismissed the action against Mr. McCord.

Under the Tennessee Workers' Compensation Act, an employee injured in an accident while in the course and scope of employment is generally limited to recovering workers' compensation benefits from the employer. See, e.g., Tenn. Code Ann. § 50-6-103. Coverage under the Act depends primarily on the existence of an employer-employee relationship. See Cromwell Gen. Contractor v. Lytle, 439 S.W.2d 598, 602 (Tenn. 1969); Clendening v. London Assurance Co., 336 S.W.2d 535, 608 (Tenn. 1960). However, our legislature has extended this relationship and has made principal contractors liable under certain circumstances for injuries sustained by the employees of subcontractors, regardless of whether such subcontractors are independent contractors. According to Tennessee Code Annotated section 50-6-113, a principal contractor will be liable when, at the time of the injury, the employee was engaged upon the subject matter of the general contract, and the injury occurred on, in, or about the premises under the management or control of the principal contractor.[5] See also Acklie v. Carrier, 785 S.W.2d 355, 357 (Tenn. 1990) (citing Bowling v. Whitley, 348 S.W.2d 310 (Tenn. 1961)); Williams v. Buchanan, 261 S.W. 660 (Tenn. 1924).

In essence, the Act creates "statutory employers" in situations where injured workers are unable to recover compensation from their immediate employers. The purpose of this provision is to "protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on the presumably responsible principal contractor, who has it within his power, in choosing subcontractors, to pass upon their responsibility and insist upon appropriate compensation for their workers." Brown v. Canterbury Corp., 844 S.W.2d 134, 136 (Tenn. 1992). Moreover, the statute prevents principal contractors from contracting out work to prevent liability by giving the claimant the right to recover from the principal contractor as a statutory employer if the immediate employer cannot pay. Stratton v. United Inter-Mountain Telephone Co., 695 S.W.2d 947, 951 (Tenn. 1985).

The determinative question in this case, then, is whether Goodyear is a principal contractor within the meaning of section 50-6-113 and therefore liable for workers' compensation benefits as a statutory employer. See Brown, 844 S.W.2d at 137. Our review of findings of fact by the trial court is *de novo* upon the record, accompanied by a presumption of the correctness of these findings, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(e); see also Presley v. Bennett, 860 S.W.2d 857, 859 (Tenn. 1993); Galloway v. Memphis Drum Serv., 822 S.W.2d 584, 586 (Tenn. 1991).

---

[5] Tennessee Code Annotated section 50-6-113 provides in pertinent part:

(a) A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

. . . .

(d) This section applies only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under the principal contractor's control or management.

A company or other business is considered a principal contractor if the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees. See Barber v. Ralston Purina, 825 S.W.2d 96, 99 (Tenn. Ct. App. 1991). In this case, Goodyear argues that it is not a principal contractor because the work performed by Mr. Murray and Mr. McCord was neither the type of work usually performed by Goodyear employees, nor was it a part of the regular business of the company. It is undisputed that Goodyear's principal line of business is the manufacturing of automobile tires and not painting or other maintenance work. Undoubtedly, regular maintenance, repair, painting, and cleaning are an "expectable, routine and inherent part of carrying on any enterprise," Smith v. Lincoln Mem'l Univ., 304 S.W.2d 70, 74 (Tenn. 1957), and the record reflects that Goodyear employees occasionally perform small maintenance tasks. However, Goodyear subcontracts out those projects that are more extensive in nature, or that require "special equipment [and] special techniques." This project could hardly be classified as a regular part of the employer's regular work, as the evidence presented at trial demonstrates that it could only be completed at certain times, such as when the plant was not in operation. Moreover, there is no indication that cleaning and painting overhead ducts some eighteen to twenty feet above the ground is the type of project that needs to be done on a continual basis.

However, even if a company contracts out work other than the type of work usually performed by its employees, that company may nevertheless be considered a principal contractor based on the right of control over the conduct of the work and over the employees of the subcontractor. See Barber, 825 S.W.2d at 99; see also Brown, 844 S.W.2d at 137; Acklie, 785 S.W.2d at 357-58; Stratton, 695 S.W.2d at 952. We emphasize that the control test is satisfied if the proof demonstrates that the alleged employer had a *right to control*, regardless of whether this right was actually exercised. Galloway v. Memphis Drum Serv., 822 S.W.2d 584, 586 (Tenn. 1991); Carver v. Sparta Elec. Sys., 690 S.W.2d 218, 220 (Tenn. 1985); Wooten Transports, Inc. v. Hunter, 535 S.W.2d 858 (Tenn. 1976).

Based on our review of the record, we conclude that Goodyear neither possessed nor exercised any right of control over Mr. McCord's employees or their conduct of the work. First, the record reflects that Goodyear did not hire Mr. Murray or include him in the contract negotiations. Payment of the full contract amount was made solely to Mr. McCord upon the satisfactory completion of each purchase order. Mr. McCord, in turn, paid hourly wages to Mr. Murray.

Second, contrary to the trial court's findings, the preponderance of the evidence indicates that Goodyear did not have the right to terminate Mr. Murray or any of Mr. McCord's employees. Instead, the evidence indicates that Goodyear only had the right to replace Mr. McCord or to require that he redo the work if the results were unsatisfactory. Indeed, Goodyear's maintenance manager testified that he had no contact with any of Mr. McCord's employees. If either he or any other Goodyear supervisor found the work to be unsatisfactory or otherwise noticed improper work behavior by any of Mr. McCord's employees, the policy was to confront Mr. McCord specifically.

Third, the record also indicates that Goodyear neither possessed nor exercised any control or authority over how Mr. Murray was to perform his work. Goodyear did not require specific methods for painting, nor did it supervise his personal painting techniques other than to ensure compliance with its safety regulations applicable to every worker in the building. Indeed, Goodyear did not have the equipment or other materials necessary to perform the project itself, which is what led Goodyear to contract out the project.

Finally, our decisions in prior cases factually similar to this one indicate that Goodyear did not exercise a "sufficient degree of control" to be held liable for Murray's workers' compensation benefits. For example, in Hendrix v. Ray-Ser Dyeing Co., 462 S.W.2d 483 (Tenn. 1970), the defendant contracted with painting subcontractor John Scott to paint the company's smoke stack for a stipulated price. In turn, Scott hired the plaintiff to help with the painting. The plaintiff was severely injured when he fell approximately twenty feet off of the stack. This Court determined that the defendant did not assume any control over Scott or his employees where Scott furnished his own equipment, hired his own employees, and painted according to his own methods and at his own convenience. Moreover, although the stack was a vital part of the defendant's business, the defendant had never used its own employees for this type of work and instead, had contracted with Scott on previous occasions to perform this project.

### CONCLUSION

Accordingly, we hold that the evidence preponderates against the trial court's finding that Goodyear was a principal contractor under section 50-6-113 and was therefore a statutory employer who is liable for workers' compensation benefits. Goodyear contracted out a project that was not part of the regular business of the company, or of the type of work usually performed by its employees. Furthermore, the only control that Goodyear retained was to regulate the general time frame in which the work could be performed and to ensure that the results conformed to its specifications. Therefore, for the foregoing reasons, the judgment of the trial court is reversed.

Costs of this appeal are taxed to the appellee, Jerry Wayne Murray.

_____

WILLIAM M. BARKER, JUSTICE