**Ronald BRAY, Plaintiff,**

v.

**TENNESSEE VALLEY AUTHORITY, Defendant.**

No. 2:09–cv–02531–JPM–tmp.

United States District Court, W.D. Tennessee, Western Division.

Sept. 24, 2010.

Joseph Koury, Kirk A. Caraway, Allen Summers Simpson Lillie & Gresham, Memphis, TN, for Plaintiff.

David Demar Ayliffe, Thomas A. Robins, Edwin W. Small, Tennessee Valley Authority, Knoxville, TN, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JON P. McCALLA, Chief Judge.

Before the Court is Defendant Tennessee Valley Authority's ("TVA") Motion for Summary Judgment (Docket Entry ("D.E.") 18), filed July 8, 2010. Plaintiff Ronald Bray ("Plaintiff") filed his response in opposition on August 30, 2010. (D.E. 28.) TVA filed a reply brief with leave of the Court on September 9, 2010. (D.E. 32.) The Court held a telephonic hearing on the Motion on September 15, 2010. Present for Plaintiff were Joseph Koury, Esq., and Kirk Caraway, Esq. Present for TVA were Thomas Robins, Esq., and David Ayliffe, Esq. For the reasons set forth below, the Court GRANTS TVA's Motion for Summary Judgment. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

### I. Background

On August 18, 2008, Plaintiff suffered serious physical injuries at TVA's Allen Fossil Plant in Memphis, Tennessee. (Answer ¶ 6 (D.E. 12).) At the time of the accident, Plaintiff was employed by Day & Zimmerman, NPS, Inc. ("D & Z"), a TVA contractor. (*Id.* ¶ 5.) Plaintiff was making boiler tube repairs when he inhaled anhydrous ammonia that had leaked into the boiler.[1] (*Id.*) After inhaling the ammonia,

---

1. TVA "does not dispute that the anhydrous ammonia resulted from a leak ... and that Mr. Bray did not do anything which caused or contributed to his exposure to the ammo-

Plaintiff blacked out and fell into the boiler. (*Id.*) Plaintiff and two other boilermakers received medical treatment as a result of their exposure. (*Id.* ¶ 8.)

Plaintiff filed the instant suit on August 14, 2009. (*See* Compl. (D.E. 1).) Plaintiff alleges that TVA was negligent and negligent per se in allowing anhydrous ammonia to leak into the boiler. (*Id.* ¶¶ 17–18.) Plaintiff seeks $1,000,000 in compensatory damages and reasonable attorney's fees and costs. (*Id.* ¶ 20.)

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

When confronted with a properly supported motion for summary judgment, the nonmoving party "must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2); *see also Abeita v. TransAm. Mailings, Inc.,* 159 F.3d 246, 250 (6th Cir.1998). However, " '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.' " *Street v. J.C. Bradford & Co., Inc.,* 886 F.2d 1472, 1479 (6th Cir.1989) (*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III. Analysis

TVA argues that Plaintiff's suit is precluded by the principal contractor and exclusivity provisions of Tennessee's Workers' Compensation Law. Tenn.Code Ann. §§ 50–6–113(a); 50–6–108(a); (TVA Mem. 2.) Plaintiff counters, *inter alia,* that TVA was not his statutory employer for two reasons: (1) Plaintiff worked as an independent contractor; and (2) Plaintiff's work was not part of TVA's regular business, nor was it the same type of work that TVA usually performed. (Pl.'s Mem. in Resp. to Def. Tennessee Valley Authority's Mot. for Summ. J. ("Pl.'s Resp.") 10, 16 (D.E. 28).)

### a. Principal Contractor Status Under Tennessee Law

If TVA was Plaintiff's statutory employer, then Plaintiff is precluded from recovering in tort against TVA. Tennes-

see's Workers' Compensation Law states that a "principal contractor ... shall be liable for compensation to any employee injured ... to the same extent as the immediate employer." Tenn.Code Ann. § 50–6–113(a). It follows that a principal contractor has the same immunity in tort as Plaintiff's direct employer. *Mathis v. Bowater, Inc.*, 985 F.2d 277, 279 (6th Cir. 1993). The Tennessee Supreme Court has set forth the following test for determining whether an employer is a principal contractor:

> (1) The company undertakes work for an entity other than itself;[2] (2) the company retains the right of control over the conduct of the work and the subcontractor's employees; or (3) the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees.

*Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 421 (Tenn.2009) (internal quotations and citations omitted).

■ Of the above factors, Tennessee courts have emphasized that the "right of control" factor is the most important. *Id.* at 419. A principal contractor need not have exercised control over the work that was performed. Instead, it is enough for a principal contractor to have possessed the right of control. *Id.; see also Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 176 (Tenn.2001) ("[T]he control test is satisfied if the proof demonstrates that the alleged employer had a *right to control,* regardless of whether this right was actually exercised.").

■ Tennessee courts also consider the following six factors in analyzing whether a right of control exists:

(1) right to control the conduct of work; (2) right of termination; (3) method of payment; (4) whether the employee furnishes his or her own helpers; (5) whether the employee furnishes his or her own tools; and (6) whether the company is doing work for another.

*See Mathis,* 985 F.2d at 279 (*citing Stratton v. United Inter–Mountain Telephone Co.,* 695 S.W.2d 947, 950 (Tenn.1985)). Plaintiff contends that D & Z, and not TVA, retained the "complete authority" to control Plaintiff's work. (Pl.'s Resp. 11.) Because D & Z had exclusive control over Plaintiff's work, Plaintiff argues that TVA could not be his statutory employer. (*Id.*) Plaintiff also asserts that the plain language of the contract between TVA and D & Z controls. (*Id.* at 12.) The contract states that D & Z "shall be an independent contractor for all purposes of this Agreement ... and not the servants or agents of TVA." (Pl's Resp. Ex. 7, NPS Contract [between TVA and] Day and Zimmerman/NPS ("D & Z Contract") 105.)

### b. "Independent Contractor" Clause in the D & Z Contract Ineffective

■ The Court first addresses Plaintiff's argument regarding the "independent contractor" provision in the D & Z Contract. Though the D & Z Contract states that D & Z "shall be an independent contractor," the presence of this clause is not dispositive. Tennessee courts generally ignore such provisions and instead apply the principal contractor factors discussed above. *See, e.g., Barber v. Ralston Purina,* 825 S.W.2d 96, 100 (Tenn.Ct.App.1991) (holding that an independent contractor provision had "no effect because it is intended to insulate defendant from ... liability," and that the provision was "not

**2.** Neither party disputes that TVA has not undertaken work for an entity other than itself.

dispositive of the instant case")(*citing Stratton,* 695 S.W.2d at 953). Therefore, Plaintiff's argument that the "independent contractor" clause in the D & Z Contract controls is unavailing because the Court must instead apply the principal contractor factors.

### c. TVA's Right of Control over Plaintiff's Work

■ The Court next addresses Plaintiff's contention that TVA had no right of control over his work because the Project Maintenance and Modification Agreement, an agreement among labor unions to which TVA and D & Z are signatories, "sets forth the basic agreement covering the rates of pay, hours of work and conditions of employment to be observed by the parties...." (Pl.'s Resp. 4.) Plaintiff points to specific provisions, such as "Contractor [i.e., D & Z] has the complete authority and right to ... [p]lan, direct, and control the operation of the work," "[d]ecide the number of employees to be hired," "[d]etermine work methods and procedures," and "[d]ischarge, suspend, or discipline employees for proper cause." (Pl.'s Resp. Ex. 9, Project Maintenance and Modification Agreement ("PMMA") 226.) If taken out of context, these PMMA provisions might appear to grant to D & Z an exclusive right of control over Plaintiff's work.

Notwithstanding the PMMA provisions that Plaintiff cites, it is clear that the PMMA governs only the relationship among TVA's contractors and the various labor unions, and not the relationship between TVA and D & Z. Specifically, the PMMA's covenants state that the "Council Unions wish to establish and administer said Collective Agreement [i.e., the

PMMA] in concert, each with the other, and all with the Contractor [i.e., D & Z]" and that the "Council Unions herein listed with the Contractor ... wish to enter into an agreement for their mutual benefit covering work of this nature." (*Id.* at 225.) Thus, it is the D & Z Contract—and not the PMMA—that controls the rights and obligations between TVA and D & Z.[3]

■ The Court next examines the relevant terms of the D & Z Contract using the six factors that Tennessee courts consider in determining whether a right of control exists. *Mathis,* 985 F.2d at 279.[4] As to the first factor, TVA had a right to control the conduct of the work. The D & Z Contract states: "If it is determined that a subcontractors' or [contractor's] personnel fail to meet TVA's ... performance requirements ... TVA reserves the right to direct [contractor] to discontinue the services of such subcontractor or personnel." (D & Z Contract 090.) Moreover, TVA reserved the right to "add or delete specific items of Work from the scope of a Project Authorization" and to "make changes in the Work ... within the general scope of this Agreement...." (*Id.* at 087–088.) Finally, D & Z was not even allowed to begin performing until TVA issued a "written request for a proposal...." (*Id.* at 085.)

As to the second factor, TVA had the right of termination. The D & Z Contract provides that TVA may "at any time and for any reason, suspend the performance of all or any portion of Work to be performed...." (*Id.* at 118.) TVA also reserved the right to terminate D & Z's performance under the contract "whenever

---

**3.** The D & Z Contract states that "[i]n the event of any conflict between this Agreement and any of the attachments hereto, the terms and provisions of this Agreement shall control." (D & Z Contract 089.) Therefore, even if there were a direct conflict between the

PMMA and the D & Z Contract, the D & Z Contract would govern.

**4.** The six factors from *Mathis* are listed on pages five and six of this Order, *supra.*

the Contracting Officer, in his/her sole judgment, shall determine that such termination is in the best interest of TVA." (*Id.* at 113.)

As to the third factor, TVA paid D & Z for all "actual costs of wages and payroll taxes incurred in completion of Work as required by this Agreement," including "[g]ross wages," "FICA, Federal and State unemployment taxes," and "[c]ontributions at cost for employee benefit plans...." (*Id.* at 120.)

As to the fourth and fifth factors, while D & Z furnished its own helpers, TVA provided "all permanent plant equipment and materials" and made available "agreements ... through which hand tools, supplies, and expendable materials which are required ... may be purchased." (*Id.* at 087.) The sixth factor is not at issue here.

Because four of the five relevant factors strongly support TVA's assertion that it had a right of control over Plaintiff's work, the Court concludes that TVA was Plaintiff's statutory employer.[5] For this reason alone, summary judgment for TVA is proper. Plaintiff may not recover against TVA in tort. Nonetheless, the Court will also address Plaintiff's argument that his work was not a part of TVA's regular business, nor was it the same type of work that TVA usually performed.

### d. *Plaintiff's Work as a Part of TVA's Regular Business*

■ Plaintiff asserts that the boiler tube repair work he performed was not a part of TVA's regular business. (Pl.'s

Resp. 16.) Plaintiff's argument relies heavily on a recent Tennessee Supreme Court decision, namely, *Lindsey v. Trinity Communications, Inc.,* 275 S.W.3d 411 (Tenn.2009). In *Lindsey,* the Tennessee Supreme Court held, *inter alia,* that the work performed by a cable splicer for a small cable company was not a part of the company's regular business. 275 S.W.3d at 422.

*Lindsey* is easily distinguishable from the instant case, however. In *Lindsey,* the defendant cable company had only two employees. *Id.* Moreover, the work that the plaintiff splicer was doing had never before been performed by the company. *Id.* (explaining that "[w]hether work is a regular part of the business of any entity is a fact-specific inquiry ... relative to the size and scope of the business").

Unlike the two-employee defendant cable company in *Lindsey,* TVA is one of the largest wholesale suppliers of electricity in the United States. (Def.'s Mot. for Summ. J. Ex. 3, Declaration of William K. Castle, Jr. ("Castle Decl.") ¶ 2.) TVA operates eleven fossil plants (with fifty-nine operating units) throughout the Tennessee Valley. (Id.) TVA regularly repaired boiler tube leaks using its own boilermakers until the early 1990s, when TVA began using contractor boilermakers. (Id. ¶ 14.) TVA boilermakers still occasionally repair boiler tube leaks. (Id.) In light of the above, it is obvious that *Lindsey's* facts differ significantly from the facts of this case. Thus,

---

5. The Court notes that the principal contractor test is disjunctive. A company may be a principal contractor if the "work being performed ... is part of the regular business of the company *or* is the same type of work usually performed by the company's employees." *Murray,* 46 S.W.3d at 176 (emphasis added). However, the *Murray* court makes clear that the principal contractor test may be satisfied in another way: "[E]ven if a company contracts out work ... that company may nevertheless be considered a principal contractor based on the right of control over the conduct of the work and over the employees of the subcontractor." *Id.* Because TVA had a right of control over Plaintiff's work, TVA was Plaintiff's statutory employer. As a result, Plaintiff is precluded from recovering against TVA in tort.

Plaintiff's reliance on *Lindsey* is misplaced.

Plaintiff also contends that "[t]he work Plaintiff was engaged in when he was injured ... can hardly be classified as a regular part of TVA's regular work [sic]." (Pl.'s Resp. 19.) Plaintiff characterizes boiler tube repairs as a "specialized project" that could only "be performed while the boiler was not in operation." (*Id.*) Plaintiff states that "TVA's principal work was to produce power." (*Id.*)

Upon the Court's review of the record, TVA's boiler tube repairs do not appear to be a specialized project. Indeed, over 200 planned and forced maintenance outages have occurred at the Allen Fossil Unit over the last twenty years. (Castle Decl. ¶ 7.) During these outages, outage schedules are prepared by TVA managers. (*Id.* ¶ 8.) The outage schedules dictate which repairs, including boiler tube repairs, will be made during the outages. (*Id.*)

Other district courts in the Sixth Circuit, in cases that are quite similar to the instant case, have found that "[r]egular maintenance and repair work are an inherent part of carrying on the enterprise of operating ... [TVA's] power plants." *Lambert v. Tennessee Valley Authority,* 2002 WL 32059747, at *4 (E.D.Tenn. Sept. 17, 2002); *see also Agarwal v. Tennessee Valley Authority,* 2005 WL 2219113, at *5 (E.D.Tenn. Sept. 12, 2005) ("[T]his Court has made clear that TVA is engaged in a business ... which by its size and nature requires TVA to have an extensive ongoing program of constant ... maintenance service.") (internal quotations omitted). While *Lambert* and *Agarwal* are not binding, this Court sees no reason to deviate from those courts' conclusions.[6] There-

fore, the Court finds that the boiler tube repair work that Plaintiff performed was a part of TVA's regular business. As such, TVA was a principal contractor and Plaintiff is precluded from recovering against TVA in tort.

### *IV. Conclusion*

For the foregoing reasons, TVA's Motion for Summary Judgment is GRANTED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE. Plaintiff's other pending Motions are therefore DENIED AS MOOT.

---

6. Tennessee appellate courts have endorsed *Lambert's* conclusion. *See Griffith v. Jellico Cmty. Hosp., Inc.,* 2010 WL 2160775, at *8 (Tenn.Ct.App. May 28, 2010) ("[T]he decision in *Lambert* ... is instructive."); *Randolph v.*

*Eastman Chem. Co.,* 180 S.W.3d 552, 560 (Tenn.Ct.App.2005) ("[W]e agree with the reasoning of the Court in that case [i.e., *Lambert* ] and reach a similar conclusion here.").