IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 4, 2024 Session

## BRIAN COBLENTZ ET AL. V. TRACTOR SUPPLY COMPANY

**Appeal from the Circuit Court for Lincoln County**
**No. 2013-CV-85      M. Wyatt Burk, Judge**

_____

### No. M2023-00249-COA-R3-CV

_____

A sales representative for a product vendor was injured while in a Tractor Supply store performing his job. The sales representative received workers' compensation benefits from his employer, a hardware product company, and then proceeded with a tort case against Tractor Supply. We agree with the trial court's conclusion that Tractor Supply was the sales representative's statutory employer within the meaning of Tenn. Code Ann. § 50-6-113(a) and, therefore, his recovery from his employer was his exclusive remedy. Therefore, we affirm the trial court's grant of summary judgment in favor of Tractor Supply.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., joined, and JEFFREY USMAN, J., filed a separate dissenting opinion.

William Bliss Hicky and Sarah Michelle Ferraro, Nashville, Tennessee, and Morgan Juliana Hartgrove, Franklin, Tennessee, for the appellants, Brian Coblentz and Cayce Coblentz.

Richard Colten Jones and Marshall T. Cook, Hendersonville, Tennessee, for the appellee, Tractor Supply Company.

### OPINION

#### FACTUAL AND PROCEDURAL BACKGROUND

Brian Coblentz worked as an outside sales representative for Stanley National Hardware ("Stanley National" or "National"). The job required him to visit various hardware stores, including Tractor Supply stores, in his region every four to six weeks. At each hardware store, Mr. Coblentz took inventory of the Stanley National merchandise and

wrote orders for needed items. On August 29, 2012, Mr. Coblentz visited Tractor Supply's store in Fayetteville, Tennessee. Mr. Coblentz was injured when a 12-foot steel barn door track fell out of the Stanley National display and struck him on the head.

Mr. Coblentz and his wife ("Plaintiffs") filed a personal injury suit against Tractor Supply Company on August 12, 2013, asserting that Tractor Supply "was negligent and created an unreasonably dangerous and unsafe condition by failing to either properly install and/or maintain its display rack as well as properly stock its merchandise." The complaint also alleged that Tractor Supply "failed to adhere to proper safety procedures" and "failed to implement and/or enforce reasonable policies calculated to prevent its invitees from suffering injury." Further, according to the complaint, Tractor Supply was negligent in failing to warn Mr. Coblentz of the danger presented by the steel track display and failing to inspect the area where he was injured. In its answer, Tractor Supply raised the defense that Mr. Coblenz was injured while in the course and scope of his employment and that his exclusive remedy was under the workers' compensation statutes.

The parties agreed to stay discovery until Mr. Coblentz's workers' compensation case against Stanley National had concluded. The workers' compensation case was settled in February 2020, and the parties proceeded with discovery. In May 2022, Plaintiffs were permitted to file an amended complaint, which contained all of the allegations of the original complaint and added allegations that Tractor Supply's actions were wanton, willful, and/or reckless.

In October 2022, Tractor Supply filed a motion for summary judgment asserting that Plaintiffs' claim was barred by the exclusive remedy provision of the workers' compensation act and that Plaintiffs could not establish a prima facie case of negligence. Tractor Supply's submissions in support of its motion included excerpts from the depositions of Mr. Coblentz; excerpts from the deposition of Tractor Supply employee Brian Spears; excerpts from the depositions of former Tractor Supply employees Jody Boaz and Leah Holcomb; and a Vendor Agreement executed by Tractor Supply and Stanley National. Plaintiffs responded in opposition to Tractor Supply's motion for summary judgment and filed supporting exhibits, including an affidavit of Mr. Coblentz as well as excerpts from the depositions of Mr. Coblentz, Ms. Boaz, Ms. Holcomb, and Mr. Spears.

The trial court heard the motion for summary judgment on November 21, 2022. On January 26, 2023, the trial court entered an order granting Tractor Supply's motion. The court determined that Tractor Supply was a principal contractor within the meaning of Tenn. Code Ann. § 50-6-113 and immune from tort liability for Mr. Coblentz's injury. Further, the court found that Mr. Coblentz could not establish a prima facie case for negligence under Tennessee premises liability law. Plaintiffs appealed.

Plaintiffs present the following issues for our consideration: (1) whether the trial court erred in relying on inadmissible evidence in ruling on the motion for summary judgment; (2) whether the trial court erred in finding that there were no issues of material fact in dispute; (3) whether the trial court erred in determining that Tractor Supply was the principal contractor for purposes of the workers' compensation act; (4) whether the trial court erred in granting summary judgment to Tractor Supply on the premises liability claim.

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

ANALYSIS

I.      Evidentiary issue

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must submit evidence either "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. A party moving for summary judgment must present facts to the court through sworn testimony and/or authenticated documents, which must be admissible at trial in order to be considered by the trial court. *Summers v. Cherokee Child. & Fam. Servs., Inc.*, 112 S.W.3d 486, 510 (Tenn. Ct. App. 2002) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). If the nonmoving party fails to make a timely objection, however, "[u]ncertified or otherwise inadmissible material may be considered" by the court. *Id.*

Plaintiffs assert on appeal that the trial court erred in relying upon a 2009 Vendor Agreement between Tractor Supply and Stanley National because it was "unauthenticated and contained inadmissible hearsay." Tractor Supply argues that the Vendor Agreement was not necessary to the trial court's determination as to whether Tractor Supply was a statutory employer. Tractor Supply attached the Vendor Agreement as Exhibit J to its

statement of undisputed material facts ("Defendant's Statement") in support of paragraph 36, which states:

> National provided products to [Tractor Supply] in accordance with the Vendor Agreement executed by National and [Tractor Supply] on or around October 7, 2009 and the Hardware Program Addendum executed by the parties on or around December 13, 2012. (Vendor Agreement and Hardware Program Addendum attached hereto collectively as Exhibit J).

In their response to Defendant's Statement, Plaintiffs objected to paragraph 36 as follows:

> Plaintiff objects to this statement of material fact in that it is not supported by a specific citation to the record as required by T.R.C.P. 56.03. As such, this statement is in violation of T.R.C.P. 56.03 and no response is therefore needed. To the extent a response is necessary, Mr. Coblentz testified that he does not recall ever seeing this document prior to his deposition and that he disagreed with responsibilities outlined in it based on what he had been told to maintain. (Ex. 2: Depo. of B. Coblentz ¶ 63:11-16, 66:19-24). It is further disputed as to the relevance of the Hardware Program Addendum as it was executed four (4) months after the underlying incident.

Plaintiffs' response to Defendant's Statement does not include an objection that the Vendor Agreement was not admissible under Tenn. R. Evid. 901. In its response in opposition to Tractor Supply's motion for summary judgment, Plaintiffs did not include an argument that the Vendor Agreement was inadmissible. Thus, the trial court's order granting summary judgment did not address this evidentiary issue.

Therefore, we have concluded that Plaintiffs waived this evidentiary objection because they did not raise it below. *See Summers*, 112 S.W.3d at 510 ("Uncertified or otherwise inadmissible material may be considered if not challenged, and the objection must be timely or it will be deemed to have been waived.").[1]

## II.     Statutory employee

Next, we turn to the issue of whether the trial court erred in concluding that Tractor Supply was a statutory employer for purposes of the workers' compensation act.

---

[1] As to Plaintiffs' second issue, regarding whether the trial court erred in concluding there were no material facts in dispute, the Plaintiffs have not identified in their argument any factual disputes relating to the issue of whether Tractor Supply was a statutory employer. As discussed below, we have determined that the statutory employer issue is determinative. Therefore, we need not consider the second issue.

Under Tennessee's Workers' Compensation Law ("the Act"), Tenn. Code Ann. §§ 50-6-101—50-6-921, "'an employee injured in an accident while in the course and scope of employment is generally limited to recovering workers' compensation benefits from the *employer.*'" *Fayette Janitorial Servs. v. Kellogg USA, Inc.*, No. W2011-01759-COA-R3-CV, 2013 WL 428647, at *3 (Tenn. Ct. App. Feb. 4, 2013) (quoting *Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 175 (Tenn. 2001) (emphasis added)). With respect to "injuries sustained by employees of subcontractors," however, the Act extends workers' compensation liability under certain circumstances. *Id.* Tennessee Code Annotated section 50-6-113(a) provides:

> A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Under this provision, the "statutory employer rule," "the principal contractor 'is secondarily liable for workers' compensation, and thus pays workers' compensation only if the immediate employer cannot do so.'" *Fayette Janitorial*, 2013 WL 428647, at *3 (quoting Joseph H. King, Jr., *The Exclusiveness of an Employee's Workers' Compensation Remedy Against His Employer*, 55 TENN. L. REV. 405, 429 (1988)).

> Our Supreme Court has explained the purpose behind the statutory employer rule:

> The statute is intended to ensure that all workers will receive compensation when they are injured in the course of their employment. *Stratton* [*v. Un. Inter-Mountain Tel. Co.*], 695 S.W.2d [947,] 951 [(Tenn. 1985)]. Section 50-6-113 extends liability from the employer that does not have workers' compensation insurance to an intermediate or principal contractor that does have coverage, which "prevents employers from contracting out normal work simply to avoid liability for workers' compensation." *Id.* In addition, this encourages employers to hire responsible, insured subcontractors. *Posey v. Union Carbide Corp.*, 705 F.2d 833, 835 (6th Cir. 1983).

*Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 420 (Tenn. 2009). In exchange for its exposure to liability under the Act, the principal contractor gains immunity from tort liability. *Fayette Janitorial*, 2013 WL 428647, at *4. Pursuant to Tenn. Code Ann. § 50-6-108(a), the exclusive remedy provision of the Act, "The rights and remedies granted to an employee subject to this chapter . . . shall exclude all other rights and remedies of the employee, the employee's personal representative, dependents or next of kin, at common law or otherwise, on account of the injury or death." Moreover, the statutory employer's tort immunity applies even if the statutory employer was never required to pay workers' compensation benefits to the worker. *Fayette Janitorial*, 2013 WL 428647, at *4. The

statutory employer rule "'will often give the statutory employer the best of both worlds'"—that is, the statutory employer usually will not be required to pay workers' compensation benefits (because the subcontractors will be insured) and is protected from tort claims by subcontractors' employees. *Id.* at *5 (quoting King, 55 TENN. LAW REV. at 429-30).

In order to be a principal contractor (or statutory employer) under Tenn. Code Ann. § 50-6-113, a company must satisfy one of three tests established by our Supreme Court:

> Generally, a company is considered a principal contractor if: (1) the company undertakes work for an entity other than itself; (2) the company retains the right of control over the conduct of the work and the subcontractor's employees; or (3) "the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees." *Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 176 (Tenn. 2001); *Stratton*, 695 S.W.2d at 951-52.

*Lindsey*, 275 S.W.3d at 421. The parties in the present case do not dispute that the first two tests are not applicable here. The trial court concluded that Tractor Supply met the third test, and the propriety of that ruling is the issue we must address here. Was the work performed by Stanley National's employee part of Tractor Supply's regular business or the same type of work usually performed by the Tractor Supply's employees?

In concluding that Tractor Supply was a statutory employer under the third test, the trial court stated, in part:

> In the instant case, Plaintiff was injured when he was engaged upon the subject matter of the contract between his employer and [Tractor Supply]; that is, he was checking inventory of the product, servicing the National display and [aisle] for [Tractor Supply], and cleaning and straightening the National display. Plaintiff said he had a monthly call cycle of several visits to various [Tractor Supply] stores every month, and every [Tractor Supply] store in his call cycle had a barn door track display for which he performed inventory checks. Based on these undisputed facts, there is no question that Plaintiff's work activities at [Tractor Supply] were continuous in nature and were part of [Tractor Supply's] regular business. Part of Plaintiff's job was to tidy-up the National displays at [Tractor Supply], pick up trash in the display, etc., and that type of work is a routine and inherent part of carrying on any enterprise. Moreover, the work Plaintiff performed was the type of work that was also typically performed by [Tractor Supply's] employees, such as inspecting the displays, making sure displays were properly stocked (product volume/numbers), and keeping them organized and clean. The regular practice of [Tractor Supply] is to receive product, place it in the

displays, and ensure that sufficient levels of product are in the shelves in order to sell products to the end user (customers). These functions are the type of project that needed to be done on a continual basis. Without the servicing and replenishment of shelves, no product would be available for sale to the end user. The facts presented by [Tractor Supply] demonstrate that the work performed during Mr. Coblentz's call cycle was done on a regular and continual basis, and it was of vital importance to [Tractor Supply's] ongoing business operation to sell products, particularly National products. The Court acknowledges that not all [Tractor Supply] employees' duties were identical to that of Mr. Coblentz; however, there is no question of fact that the [sic] some of the work Plaintiff performed at [Tractor Supply] stores was part of the *regular business* of [Tractor Supply] and was the same type of work usually performed by [Tractor Supply's] employees, such as inspecting the displays, making sure displays were properly stocked, and keeping them organized and clean. Under the "regular business" prong of the statutory employer analysis, it is not essential to have [Tractor Supply's] employees working alongside National employees doing the *same* work.

As the trial court noted, "[a] company may be deemed a statutory employer under one prong of the [third] test, even if it does not meet the other." *See Lindsey*, 275 S.W.3d at 422 (holding that the work performed by the subcontractor's employees was not a regular part of the company's business, but concluding that the company was a principal contractor because the work performed was the same type usually performed by the company's employees).

A.  Part of Tractor Supply's regular business

Statutory employers have been described as "'those who get part of their regular work done by the employees of a subcontractor.'" *Fayette Janitorial*, 2013 WL 428647, at *6 (quoting *Brown v. Canterbury Corp.*, 844 S.W.2d 134, 136 (Tenn. 1992)). For this prong of the third test, the question is whether the work being performed by Stanley National employees is part of the regular business of Tractor Supply. *See Lindsey*, 275 S.W.3d at 421. Our Supreme Court has stated that, "Whether work is a regular part of the business of any entity is a fact-specific inquiry, relative to the size and scope of the business." *Id.* at 422. Some of the factors a court may consider include "the frequency with which the type of work is carried out," "the company's capacity to perform the work," and "whether the work is inherent or necessary in the carrying on of the business." *Dotson v. Bowater*, No. 1:08-cv-191, 2009 WL 3584325, at *8 (E.D. Tenn. Oct. 26, 2009).

It is undisputed that Mr. Coblentz visited Tractor Supply's Fayetteville store approximately once every four to six weeks. In the interim period between his visits, the products he ordered would arrive in the store and be stocked by Tractor Supply employees. Plaintiffs' argument here is that this frequency "does not rise to the level of frequency

contemplated by Tennessee courts when determining whether work is a regular part of a business." They provide no support for this statement. We consider the frequency of Mr. Coblentz's visits to be consistent with the type of services he performed at the Tractor Supply Store and one indicator that the services were part of Tractor Supply's regular business.

Plaintiffs further assert that Tractor Supply's employees did not have the capacity to perform the work Mr. Coblentz performed because his work was more specialized. They specifically argue that Tractor Supply's employees "cannot travel from store to store to inspect Stanley National displays or draft purchase order[s] and input them into Stanley National's system." Once again, Plaintiffs cite no caselaw to support this reasoning, and, as discussed below, we find it to be overly narrow and inconsistent with precedent. *See Fayette Janitorial*, 2013 WL 428647, at *7 (rejecting the plaintiffs' "narrow interpretation of 'regular business' [as] not supported by Tennessee caselaw").

In *Dotson v. Bowater*, 2009 WL 3584325, at *8, the federal district court decision in which this factor—the company's capacity to perform the work—was identified, the court cited the Tennessee Supreme Court's opinion in *Lindsey*. The relevant facts in *Lindsey* were that Trinity Communications, Inc., a cable television provider, contracted with Broadband Specialists, Inc. to install a cable system in Marion County, Tennessee. *Lindsey*, 275 S.W.3d at 415. Broadband subcontracted with HFC Services to perform work on the project, and HFC hired Mr. Lindsey to splice cable. *Id.* The trial court ruled that Mr. Lindsey was a statutory employee of Trinity. *Id.* at 416. The Tennessee Supreme Court disagreed.

Trinity argued that "the contract work was not part of its regular business and the work performed by Broadband and HFC differed from the work usually performed by Trinity." *Id.* at 421-22. Although Trinity admitted that new system construction was part of its business, the company asserted that such work was "not a *regular* part of its business." *Id.* at 422. Trinity's president testified that the company hired out its new cable construction projects. *Id.* The following summary and analysis from the court's decision is instructive:

> For this project, Trinity prepared the maps for the site showing where the cable was to be hung and spliced, and Broadband was to "build the entire job." According to Hunter, Trinity's employees do not work on new system construction. At the time of its contract with Broadband, Trinity had only two employees, both of whom were inexperienced and incapable of handling the construction of a new system.
>
> We conclude that the evidence preponderates against the trial court's finding that the work performed by Lindsey was a regular part of Trinity's business. Whether work is a regular part of the business of any entity is a

fact-specific inquiry, relative to the size and scope of the business. Construction or repair that is routine activity for a large business, which normally expects to perform the work with its own employed staff, may be a nonrecurring and extraordinary undertaking for a small business. 4-70 LARSON'S WORKERS' COMPENSATION LAW § 70.06(3) (2008). While new system construction may be a regular part of the business of "a cable company" in some instances, Trinity's small size and limited number of employees did not allow this type of work to be a regular part of its business. *See Goodyear,* 46 S.W.3d at 177 (holding that a painting job was not a regular part of the business because it was more extensive and specialized than a regular maintenance project).

*Lindsey*, 275 S.W.3d at 422. Thus, in *Lindsey*, the small size of the company (which had only two employees) meant that it was not able to perform the work of constructing new cable systems as a routine activity. Tractor Supply is a large company with a much greater capacity than the company at issue in *Lindsey*.

Plaintiffs cite *Murray v. Goodyear*, 46 S.W.3d at 172, and argue that Tractor Supply subcontracted out the inventorying and ordering of Stanley National products and that there is no evidence that Tractor Supply employees could draft Stanley National purchase orders and input them into Stanley National's system. In *Murray*, the Goodyear tire manufacturing company hired the plaintiff's employer to paint overhead ducts in its plant, and the plaintiff was injured while painting the ducts. *Murray*, 46 S.W.3d at 172. The Supreme Court reversed the trial court's finding that Goodyear was the plaintiff's statutory employer. *Id.* at 172. Although Goodyear employees sometimes performed minor maintenance tasks, including painting, "Goodyear considered this project of painting the overhead duct work in the rafters of the plant a 'specialized' project involving 'special paint and special equipment [and] techniques.'" *Id.* The Court concluded that the duct painting project "could hardly be classified as a regular part of the employer's regular work, as the evidence presented at trial demonstrates that it could only be completed at certain times, such as when the plant was not in operation" and that there was no evidence "that cleaning and painting overhead ducts some eighteen to twenty feet above the ground is the type of project that needs to be done on a continual basis." *Id.* at 176.

Contrary to Plaintiffs' position, there is no evidence that the work he performed is specialized. There is no factual dispute regarding the type of work carried out by Stanley National outside sales representatives, including Mr. Coblentz. In his deposition, Mr. Coblentz gave the following description of his job responsibilities:

I would say service and inventory control. Inventory, as far as if it's sold out, we write an order to replace it. Service, as far as if product specifically, as an example, I guess I should say, if there were a carded product hanging on a hook and it doesn't belong on that hook, I would move said card product

to the correct hook so--, and then if there's trash on the bins on the bottom of the [Stanley National] display, I would clean up the trash. And if there's any product that doesn't belong in the display, I would remove it from our display and put it in a basket for a catch-all so the store personnel could restock it in an appropriate area.

At least part of the work performed by Mr. Coblentz—including inspecting the displays, making sure they were properly stocked, and keeping the area organized and clean—was the same type of work performed by Tractor Supply's employees with respect to other merchandise and displays in the store, and sometimes with respect to Stanley National's products. Based upon the undisputed facts, we cannot agree that Tractor Supply lacked the capacity to perform many of the tasks done by Mr. Coblentz.

As to the third factor, whether the work is inherent or necessary in the carrying on of the business, Plaintiffs argue that drafting purchase orders for Stanley National products and putting orders into the Stanley National system is not an inherent and necessary part of Tractor Supply's business. We again reject Plaintiffs' narrow definition of the work at issue here. The tasks provided by Mr. Coblentz, including ordering products and servicing the product displays, are vital to a retail hardware business; otherwise, there are no products on the shelves to sell. Furthermore, we note that Tractor Supply's Vendor Agreement with Stanley National states that all purchase orders must be completed on forms supplied by Tractor Supply.

Based upon the relevant undisputed facts, we agree with the trial court's conclusion that the work performed by Mr. Coblentz was part of Tractor Supply's regular business and that, therefore, Tractor Supply was his statutory employer.

B. Type of work usually performed by Tractor Supply's employees

Because we have determined that Mr. Coblenz's work satisfied the first prong of the third test, we need not consider the second prong in detail. Plaintiffs' arguments regarding the second prong are essentially the same as for the first prong. Plaintiffs emphasize the absence of evidence that Tractor Supply employees "are even capable of drafting purchase orders and entering those into Stanley National's system." We, again, reject Plaintiffs' narrow definition of the type of work Mr. Coblentz performed. We agree with the trial court's conclusion that at least "some of the work Plaintiff performed at TSC stores was . . . the same type of work usually performed by [Tractor Supply] employees."[2]

_____

[2] Plaintiffs also argue on appeal that "the trial court erred in finding that Plaintiff was engaged upon the subject matter of the contract between [Tractor Supply] and Stanley National." Plaintiffs did not make this argument in their response in opposition to Tractor Supply's motion for summary judgment; hence, the trial court did not address this issue in its order. We consider this issue waived. *See Duke v. Duke*, 563 S.W.3d 885, 898 n.2 (Tenn. Ct. App. 2018) ("'It is well settled that issues not raised at the trial level are considered waived on appeal.'") (quoting *Moses v. Dirghangi*, 430 S.W.3d 371, 381 (Tenn. Ct. App. 2013)). We

Our conclusion that Tractor Supply was Mr. Coblentz's statutory employer pretermits the remaining issues, regarding premises liability.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellants, Brian Coblenz and Cayce Coblentz, for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE

---

further note that, in this section of their appellate brief, Plaintiffs assert that the trial court's order failed to adequately explain the grounds for its decision and failed to assure the parties that the court independently considered their arguments. Based upon the record, were we to consider this argument, it has no merit.