# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
November 20, 2013 Session

## CONTINENTAL CASUALTY COMPANY, ET AL. v. THERACO, INC.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 10-789-III      Ellen H. Lyle, Chancellor**

---

**No. M2012-02100-COA-R3-CV - Filed January 14, 2014**

---

Continental Casualty Company ("CNA") and Travelers Property Casualty Company of America ("Travelers") filed this suit against Theraco, Inc. ("Theraco") seeking compensation for additional workers' compensation premiums. Theraco's insurance contracts with CNA and Travelers provided that it would pay premiums for employees and all other persons who posed a risk of workers' compensation liability. Pursuant to the contracts, CNA and Travelers both charged Theraco premiums for physical therapists with whom Theraco had contracted. Theraco disputes that it is liable for paying premiums for the workers. After a hearing, the Department of Commerce and Insurance ruled that Theraco was not liable for the additional premiums because the physical therapists were independent contractors rather than employees. CNA and Travelers appealed the Department's decision to the Chancery Court for Davidson County. The trial court upheld the Department's ruling, not only concluding that the physical therapists were independent contractors, but also that they did not pose a risk of workers' compensation liability. CNA and Travelers appealed to this Court. We affirm in part, reverse in part and remand for entry of a judgment consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Benjamin M. Rose, Brentwood, Tennessee, for the appellants, Continental Casualty Company and Travelers Property Casualty Company of America.

Laurenn Disspayne, Nashville, Tennessee, for the appellee, Theraco, Inc.

**OPINION**

**I. BACKGROUND AND PROCEDURAL HISTORY**

Defendant/Appellee Theraco is a company that contracts with home health agencies in Middle Tennessee to provide physical therapy sessions to homebound patients. If a physician determines it is necessary, he or she sends an order for physical therapy to a home health agency. The home health agency then faxes the referral for physical therapy to Theraco. Theraco has contracts with twenty to thirty licensed physical therapists ("PTs") throughout Middle Tennessee. After receiving the order, Theraco will offer the assignment to one of its PTs in the appropriate geographic area. The PTs send periodic invoices to Theraco listing their patient visits and Theraco pays them bi-weekly on a per-visit basis.

In addition to the PTs, Theraco has four salaried employees–two officers and two clerical workers. Both of Theraco's officers elected exemption from workers' compensation coverage. Beginning in 2004, Theraco provided workers' compensation insurance coverage for the two clerical workers through CNA. In February 2007, Theraco's owner, Jeff McEver ("McEver") renewed Theraco's policy with CNA through March 2008 (the "2007 CNA policy"). The following year, McEver renewed the policy again with CNA through March 2009 (the "2008 CNA policy"). In July 2008, Theraco cancelled the 2008 CNA Policy and entered a new policy with Travelers covering July 2008 through July 2009 (the "Travelers Policy"). Each of the policies contained identical provisions with regards to calculating Theraco's premium liability.

All three of the aforementioned policies provided that Theraco's insurance premium would be calculated using a retroactive assessment of premiums. Using a retroactive assessment method, the insurance premium is based on the total payroll of covered individuals during the policy period. Retroactive assessments are often used in workers' compensation insurance policies because the exact number of the insured's employees may vary during the policy period, making the insurer's risk difficult to measure at the outset. *See* Steven Plitt et al., 5 *Couch on Ins. 3d* § 69:16 (2012). Under the policies, Theraco was required to pay an estimated premium amount, based on the estimated amount of risk that it would expose the insurer to during the policy period. After each policy period ended, the insurer would conduct an audit of Theraco's payroll and other business records to determine the amount of risk that it had actually been exposed to during the policy period. The final premium Theraco owed would be calculated by multiplying the insurer's insurance rate by the premium basis or payroll for covered individuals. If the final premium exceeded what Theraco had already paid, Theraco would be required to pay the balance. If the actual final premium was less than what Theraco had already paid, Theraco would receive a refund from the insurer. Notably, each of the policies created two categories of individuals for whom

Theraco would be charged premiums: (1) "[a]ll your officers and employees engaged in work covered by this policy" (the "Employee Provision"); and (2) "[a]ll other persons engaged in work that could make us liable under Part One (Workers' Compensation Insurance) of this policy" (the "Risk of Loss Provision").

In April 2008, CNA conducted a physical audit of Theraco's activity during the 2007 CNA Policy period. Following the audit, CNA concluded that during the 2007 CNA Policy period, CNA had been at risk for defending workers' compensation claims filed by the PTs. CNA concluded that the payroll for the PTs should be included in its determination of Theraco's premium for the 2007 CNA Policy period. After including the PTs in its calculation, CNA notified Theraco that it owed an outstanding premium balance of $138,267 under the 2007 CNA Policy.

On May 9, 2008, Theraco informed CNA by letter that it disputed the results of its audit and did not intend to pay the outstanding premium balance. Theraco's letter stated that the PTs were independent contractors and that they each assumed responsibility for obtaining their own workers' compensation insurance. The letter pointed out that Theraco had maintained the policy for four years and its PTs had never been included in determining its premium obligation before.

On June 3, 2008, CNA responded by letter to Theraco. Though CNA maintained its position that Theraco had an employer-employee relationship with the PTs, it acknowledged that the PTs had been erroneously excluded from its calculations of Theraco's premiums in the past. In light of the mistake in previous years, CNA informed Theraco it would not retroactively include their payroll in calculating Theraco's premium under the 2007 CNA Policy. Thus, Theraco was no longer liable for the $138,267 CNA originally billed it under the 2007 CNA Policy. However, the letter went on to state that the PTs' payroll would be included to calculate Theraco's premium under the 2008 CNA Policy. In response to that representation, Theraco cancelled the 2008 CNA Policy.

After Theraco terminated its relationship with CNA, CNA performed another audit of Theraco to determine Theraco's premium under the 2008 CNA Policy. Not surprisingly, CNA again concluded that Theraco's PTs were employees as opposed to independent contractors and included the PTs' payroll in determining the premium liability. After including the PTs' payroll in its calculation, CNA determined that Theraco owed an outstanding premium balance of $44,089 under the 2008 CNA Policy.

After ending its relationship with CNA, Theraco contracted with Travelers to cover its workers' compensation liability from July 2008 through July 2009. The structure and language of the Travelers Policy was identical to Theraco's previous policies with CNA.

Premiums were to be calculated retrospectively and Theraco was to be charged premiums for all individuals covered under either the Employee Provision or the Risk of Loss Provision.

On December 2, 2008, Theraco received a premium bill from Travelers indicating that Theraco's outstanding balance under the Travelers Policy was $132,332. Traveler's calculation of Theraco's premium balance included the payroll of the PTs, whom Travelers also considered to be Theraco employees rather than independent contractors. Theraco disputed the balance and subsequently cancelled the Travelers Policy on January 31, 2009. Following a post-termination physical audit, Travelers determined that Theraco actually owed an outstanding premium balance of $97,522 under the Travelers Policy.[1]

On December 15, 2008, Theraco lodged an administrative appeal with the Tennessee Department of Commerce and Insurance (the "Department") disputing the claimed premiums of CNA and Travelers.[2] Theraco contended that it should not be liable for paying the premium bills issued by CNA or Travelers because both bills were issued on the erroneous classification of Theraco's PTs as employees rather than independent contractors. CNA and Travelers responded, asserting that their audits correctly classified Theraco's PTs as employees and included their salaries in the calculations of Theraco's premiums.

On March 2, 2009, the Department held a hearing on the matter. The subject of the hearing was: (1) whether the PTs contracting with Theraco should be considered "employees" within the meaning of Tennessee Code Annotated section 50-6-102(10), or independent contractors; (2) whether Theraco had five or more employees and should, therefore, be considered an "employer" within the meaning of Tennessee Code Annotated section 50-6-102(11); and (3) whether Theraco owed additional premiums attributed to the fees paid to the PTs and the additional risk assumed by CNA and Travelers during their policy periods.

On March 19, 2010, the Department entered a final order in favor of Theraco. The Department concluded that the preponderance of the evidence showed that Theraco had a limited degree of control over the PTs with regard to services provided to the patients, making the PTs independent contractors rather than employees. Thus, the PTs were not to

---

[1]Though administrative proceedings began prior to the Travelers audit, the administrative law judge held the record open for determination of the exact amount Travelers claimed was due under the Travelers Policy.

[2]The Department of Commerce and Insurance became involved because Theraco obtained its insurance through the Tennessee Worker's Compensation Insurance Plan. The plan is approved by the Commissioner of Commerce and Insurance for employers who are unable to obtain coverage in the voluntary market.

be included in determining whether Theraco was an "employer" under the workers' compensation statute. Finally, the Department concluded that because the PTs were not employees, Theraco did not owe additional premiums to CNA or Travelers based on its contracts with them.

On May 11, 2010, CNA and Travelers filed a petition for review of the Department's final order in the Chancery Court for Davidson County. CNA and Travelers contended that the Department erred in determining that they did not incur risk on behalf of the PTs during the policy periods. The trial court concluded that CNA and Travelers failed to demonstrate substantial and material evidence that fairly detracted from the Department's decision that the PTs were independent contractors, nor did they demonstrate a reasonable risk that they could be held liable for paying workers' compensation benefits to the PTs. The trial court concluded that because the PTs did not fit in any provision of the insurance policies that would permit the insurers to charge a premium, Theraco did not owe the additional premiums based on its contracts with them. CNA and Travelers appealed to this Court.

## II. ISSUES PRESENTED

The following issue is now before us on appeal, as we have restated it:

1.  Whether the trial court erred in upholding the Department's determination that the insurers had no basis for charging Theraco premiums for the PTs under the 2008 CNA Policy and Travelers Policy.

## III. STANDARD OF REVIEW

CNA and Travelers filed for judicial review of the Department's decision under the Uniform Administrative Procedures Act. Therefore, the standard of review in this case is governed by statute, which provides in pertinent part:

The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
    (1) In violation of constitutional or statutory provisions;
    (2) In excess of the statutory authority of the agency;
    (3) Made upon unlawful procedure;
    (4) Arbitrary and capricious or characterized by abuse of discretion
or clearly unwarranted exercise of discretion; or
    (5)(A) Unsupported by evidence that is both substantial and material

-5-

in the light of the entire record.

> (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

> (i) No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.

Tenn. Code Ann. § 4-5-322 (2011). "A reviewing court should generally defer to an administrative agency's decision when it is acting within its area of specialized knowledge, experience, and expertise." *Parker v. Shelby County Gov't Civil Serv. Merit Bd.*, 392 S.W.3d 603, 611-12 (Tenn. Ct. App. 2012). In light of the deferential standard, we review the factual findings of the Department under the limited provisions of Tennessee Code Annotated section 4-5-322, though our review of matters of law is still *de novo* with no presumption of correctness. *Davis v. Shelby County Sheriff's Dept.*, 278 S.W.3d 256, 264 (Tenn. 2009) (citing Tenn. R. App. P. 13(d)). Under Tennessee Code Annotated section 4-5-322, the court may reverse or modify the agency's decision if the findings, inferences, conclusions, or decisions violate any constitutional or statutory provisions, or are unsupported by substantial and material evidence in the record. *Parker*, 392 S.W.3d at 612. In *Jackson Mobilephone Co. v. Tennessee Public Service Commission*, this Court discussed the standard of review for Tennessee Code Annotated section 4-5-322(h)(5) as follows:

> [A] reviewing court should not apply Tenn. Code Ann. § 4-5-322(h)(5)'s "substantial and material evidence" test mechanically. Instead, the court should review the record carefully to determine whether the administrative agency's decision is supported by "such relevant evidence as a rational mind might accept to support a rational conclusion." The court need not reweigh the evidence, and the agency's decision need not be supported by a preponderance of the evidence. The evidence will be sufficient if it furnishes a reasonably sound factual basis for the decision being reviewed.

*Jackson Mobilephone Co. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 111 (Tenn. Ct. App. 1993) (internal citations omitted).

Our role in reviewing the trial court's decision is essentially to determine "whether or not the trial court properly applied the foregoing standard of review." *Papachristou v. University of Tennessee*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000).

## IV. DISCUSSION

On appeal, the insurers' primary argument is that Theraco's relationship with the PTs exposed them to liability for workers' compensation benefits. They contend that even if the PTs are properly classified as independent contractors rather than employees, the insurers were put at risk of defending a workers' compensation lawsuit brought by one of the PTs, even if only to litigate his or her status. Theraco, on the other hand, primarily contends that the relevant inquiry is whether the PTs are independent contractors or employees. Theraco argues that because the PTs are independent contractors, there was never any reasonable risk that the insurers would have to pay them workers' compensation benefits.

We begin by noting that this case is essentially a contract dispute and we are tasked with interpreting the obligations of each party under the 2008 CNA Policy and the Travelers Policy. To ascertain and give effect to the contracting parties' intentions, we must look to their intentions as reflected in the language of the contract itself. *Estate of Hunt v. Hunt*, 389 S.W.3d 755, 758 (Tenn. Ct. App. 2012). Our role is to ascertain the intention of the parties based on the ordinary language used in the contract. *84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011). Where the terms of the agreement are clear and unambiguous, we must interpret the parties' intent from the plain and clear meaning of its terms. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975).

Because the 2008 CNA Policy and the Travelers Policy are contracts for workers' compensation insurance, our interpretation of them must be guided by Tennessee's workers' compensation laws. In *American Zurich Insurance Co. v. MVT Services, Inc.*, we gave a brief summarization of Tennessee's workers' compensation law:

> Generally, the Tennessee Workers' Compensation Law requires all employers with five or more employees, with certain exceptions, to provide workers' compensation coverage for their employees. Workers' compensation insurance policies are contracts between the insurer and the employer, by which the insurer, in return for a premium, agrees to indemnify the employer against all liabilities arising under the workers' compensation law. The provisions of the Workers Compensation Law must be read into every policy of workers compensation insurance.

> Workers' compensation insurance policies must be construed in light of the purpose of the workers' compensation statutes. The purpose of the Workers Compensation Law . . . is to provide a reliable and equitable remedy to workers who are injured on the job, while limiting liability to which the employer is exposed. To further that purpose, an employer whose operations

fall within the scope of the law must either maintain a policy of insurance to secure any possible workers' compensation liability or, alternatively, meet the stringent financial requirements necessary to maintain the status of a self-insured employer.

*American Zurich Ins. Co. v. MVT Serv., Inc.*, No. M2011-01266-COA-R3-CV, 2012 WL 3064650, at *11 (Tenn. Ct. App. Jul. 27, 2012) (internal citations and quotations omitted).

With that background, we turn to the provisions of the contract in question. As we set out above, the 2008 CNA Policy and the Travelers Policy provide that Theraco is liable for paying premiums for individuals who are employees or who present a risk of loss to the insurers. Theraco contends that the PTs do not fit into either of the categories, whereas CNA and Travelers contend that the PTs can be placed in either of them. We will discuss each of the provisions separately.

### *Whether PTs are Employees of Theraco*

CNA conducted retrospective audits of Theraco following the 2007 CNA Policy period and the 2008 CNA Policy period. Travelers conducted another retrospective audit of Theraco following the Travelers Policy period. Following each of the audits, the insurers concluded that the PTs were employees of Theraco and included their payroll in calculating Theraco's premium liability. After each of the audits, Theraco disputed the PTs' status as employees and maintained that they were independent contractors. After an administrative hearing on the issue, the Department sided with Theraco, concluding in its final order that the PTs were independent contractors. The trial court upheld the Department's determination.

Whether an individual is an employee or independent contractor is question of law; we therefore review the conclusions of the Department and trial court *de novo*. *Cromwell General Contractor, Inc. v. Lytle*, 439 S.W.2d 598, 600 (Tenn. 1969). Tennessee Code Annotated section 50-6-102(D) sets out seven factors to be considered in determining whether an individual should be considered an "employee" or "independent contractor" for workers' compensation purposes. That section states:

> (D) In a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors shall be considered:
> (i) The right to control the conduct of the work;
> (ii) The right of termination;
> (iii) The method of payment;

(iv) The freedom to select and hire helpers;
(v) The furnishing of tools and equipment;
(vi) Self-scheduling of working hours; and
(vii) The freedom to offer services to other entities.

Tenn. Code Ann. § 50-6-102(10)(D) (2008 & Supp. 2013). Though no one factor is entirely determinative, the primary factor in determining the PTs' status will be Theraco's right to control the conduct of their work. *Lindsey v. Trinity Commc'ns, Inc.*, 275 S.W.3d 411, 419 (Tenn. 2009). "The test is not whether the right to control was exercised but merely whether the right to control existed." *Stratton v. United Inter-Mountain Tel. Co.*, 695 S.W.2d 947, 950 (Tenn. 1985). A party can have some control over the results of the work without creating an employer-employee relationship. *Lindsey*, 275 S.W.3d at 419.

We will examine the relationship between Theraco and the PTs to determine whether the Department correctly concluded that the PTs are not employees. Upon receiving an order from a home health agency, Theraco offers the assignment to one of its PTs in the geographic area. Theraco has no control over whether the PT accepts or rejects the referral. If the PT chooses to accept the referral, he or she contacts the patient directly and schedules an appointment. At the first appointment, the PT conducts an initial evaluation with the patient to complete necessary paperwork and develop a plan of care. The plan of care sets out the frequency of visits, the goals the patient needs to reach, and the length of time the PT expects to work with the patient to meet those goals. The PT submits the plan of care to the home health agency, which then sends it to the patient's doctor for approval. If the doctor does not approve the plan, he or she normally contacts the PT directly to discuss it. Theraco is not involved in developing or approving the plan of care. Once the therapy visits start, the PTs submit their notes from each visit directly to the home health agency. The only documentation the PTs regularly submit to Theraco is a time sheet.

Theraco provides an ultrasound machine that the PTs can use during their visits with patients. McEver testified that the ultrasound machine gives the PTs an option to apply deep heat to arthritic patients that most home health therapists would not have. However, the decision whether or not to use the ultrasound machine is made exclusively by the PT. McEver testified that several of the PTs have declined to use the ultrasound machine. The PTs are responsible for providing any other equipment they may need, such as blood pressure cuffs, thermometers, pulse oximeters, gait belts, weights, and balance belts.

During the course of their work, the PT may decide to enlist the help of an assistant. The decision whether to use an assistant is left to the PT's discretion. Upon request, Theraco will assign the PT an assistant from a pool of physical therapy assistants with whom it has contracted. If, for some reason, the PT requests a different assistant, they can choose a

different assistant from the list of Theraco's contracted assistants in the geographical area. CNA and Travelers contend that the requirement by Theraco that the PTs supervise their assistants is indicative of Theraco's control over the PTs. However, such supervision is required by law in Tennessee. *See* Tenn. Code Ann. § 63-13-311 (2010). We agree with the trial court's conclusion that requiring compliance with the law is not indicative of control by Theraco sufficient to create an employer-employee relationship.

The PTs send invoices to Theraco each week detailing the work that they did. Every two weeks, the PTs are compensated by Theraco based on the number of visits they had. Theraco does not withhold taxes from its checks to the PTs. Additionally, Theraco does not provide any benefits for the PTs. Contracts between Theraco and the PTs expressly provide that the PT "recognizes that THERACO, INC. does not provide benefits, i.e. worker's compensation, health insurance, retirement plans, etc."[3]

Theraco does require that the PTs provide proof that they maintain their own professional liability and car insurance, as well as proof that they are licensed to practice physical therapy in Tennessee. CNA and Travelers contend that Theraco's insurance and licensing requirements are proof of control over the PTs. However, both the insurance and licensing are required by Tennessee law. Again, we think that Theraco does not exercise control sufficient to make the PTs employees by requiring that they comply with the law.

CNA and Travelers contend that Theraco maintained a "master policy" to provide professional liability insurance to the PTs. Their contention is based on several of the PTs' liability insurance certificates that reference a master policy and certificates for two of the PTs that were issued to Theraco's address. Appellants contend that the references show an interconnectedness between Theraco and the PTs. They argue that Theraco failed to provide information regarding the master policy for the retrospective premium audits conducted by CNA and Travelers. Like the trial court, we reject this argument based on insufficient proof that such a policy existed. Contracts between Theraco and the PTs each provide that the PTs are responsible for maintaining their own insurance policies. McEver testified that Theraco does not maintain any master insurance policy for its PTs and that each of the PTs is responsible for obtaining his or her own liability and car insurance. Additionally, each of the PTs that testified acknowledged that they are responsible for obtaining their own insurance.

---

[3]Though Theraco does not argue it, we think it is worth noting here that employers generally may not be relieved of workers' compensation obligations by contract or agreement. Tenn. Code Ann. § 50-6-114(a) (2008).

The overwhelming evidence[4] suggests that the PTs were responsible for obtaining their own liability and car insurance and that such policies were unconnected to Theraco.

Though the PTs cannot independently accept patients through home health agencies with whom Theraco already has a contractual relationship, the PTs are not required to work exclusively for Theraco. Multiple PTs testified that in addition to their contracts with Theraco, they contracted with other home health agencies to provide therapy services and/or were self-employed therapists. Both Theraco and the PTs have the authority to terminate their contractual relationship at any time. CNA and Travelers contend that Theraco exercises control over the PTs because they cannot independently accept patients from home health agencies with whom Theraco already has a contractual relationship. However, allowing the PTs to do so would undermine Theraco's role as a business; such a clause is necessary to protect Theraco's business interest and does not amount to control over the PTs sufficient to make them employees of Theraco.

After applying the factors of Tennessee Code Annotated section 50-6-102(10)(D), we cannot say that the Department erred in concluding that the PTs are independent contractors rather than employees. Theraco possesses little control over the means by which the PTs provide therapy to each patient. The control that Theraco exerts over the PTs to ensure that they comply with Tennessee law is control over the quality of the service rather than control over the means by which the PTs provide their services. Such control over the end-result rather than the means of achieving it is indicative of an independent contractor relationship. *Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 587 (Tenn. 1991). Based on the foregoing, we affirm the trial court's decision to uphold the conclusion of the Department that the PTs are independent contractors of Theraco. Theraco cannot be charged premiums for the PTs based on their classification as employees.

### *Whether PTs Exposed CNA and Travelers to a Risk of Loss*

As we have noted, there is a second possible basis for charging Theraco premiums for coverage of the PTs. It is created by the Risk of Loss Provisions in the 2008 CNA Policy and the Travelers Policy, which state that coverage extends to "[a]ll other persons engaged in work that could make us liable under Part One (Workers' Compensation Insurance ) of this policy." Part One of each of the policies, titled, "Workers Compensation Insurance,"

---

[4]Most damaging to the argument that Theraco maintained a secret master insurance policy is the fact that each of the insurance policies referencing a master policy are CNA policies. Though we recognize that Theraco has the burden to prove that it does not control the PTs, it contravenes logic to allow CNA to allege that Theraco did not meet its burden because it could not disprove the existence of one of CNA's own policies.

provides:

> B. We Will Pay
> We will pay promptly when due the benefits required of you by the workers compensation law.
>
> C. We Will Defend
> *We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance.* We have the right to investigate and settle these claims, proceedings or suits. (emphasis added)

Before we begin our analysis of the second provision, we note that the Department did not address this basis for holding Theraco liable. The Department ruled in favor of Theraco after concluding that the PTs were not employees. The trial court did address it, but because it concluded that Theraco was still not liable for the premiums, did not overturn the Department's final order. *See* Tenn. Code Ann. 4-5-322(5)(B)(i) ("No agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision.").

CNA and Travelers contend that had one of the PTs been injured and sued Theraco for workers' compensation benefits during either of the relevant policy periods, they would have had a duty under Part One, Paragraph C of the policies to defend the lawsuit at their own expense. Therefore, the insurers contend that Theraco is liable for premiums charged for the PTs under the Risk of Loss Provisions of the 2008 CNA Policy and the Travelers Policy. The trial court considered that argument, but rejected it, concluding that the provision requires a reasonable risk that the insurer could be liable to a PT. The court explained that the reasonable expectation in this case is that a PT would never recover from the insurer because applying the statutory factors of Tennessee Code Annotated section 50-6-102(10)(D), the PTs are clearly independent contractors. On several occasions, this Court has addressed retroactive premium assessments in which the parties' dispute centered on whether certain individuals should be included in calculating the premium. Each of the cases interpreted an insurance contract that contained an Employee Provision and a Risk of Loss Provision identical to the ones in the 2008 CNA Policy and the Travelers Policy. We think that a review of those cases will be helpful to our analysis.

In *CNA (Continental Casualty) v. King*, the insured ("King") operated a roofing business. King did not have any employees, instead he used subcontractors to do work for him. *CNA (Continental Casualty) v. King*, No. M2004-02911-COA-R3-CV, 2006 WL 2792159, at *1 (Tenn. Ct. App. Sept. 28, 2006). One of King's general contractors required that he have proof of workers' compensation insurance before it would contract with him.

*Id.* To satisfy the requirement, King purchased a workers' compensation policy from CNA. *Id.* Like Theraco's policies, King's policy with CNA provided for a retrospective determination of premiums owed after the expiration of the policy period. *Id.* at *2. Also, like Theraco's policies, King's policy provided that he would be charged premiums for individuals who could be included in its Employee Provision or its Risk of Loss provision. *Id.* at *1.

On the insurance application, King indicated that he would not be using subcontractors or subletting any of the work. *Id.* at *1. Based on his answers, CNA assessed King a minimum premium of $750. *Id.* Despite his representation to the contrary, King used six subcontractors on the job. When CNA conducted its audit, it learned at King had employed the subcontractors but had not identified them in the insurance application. *Id.* at *2. CNA promptly cancelled the policy and assessed King an additional premium of $14,790. *Id.* King refused to pay and CNA filed a lawsuit to collect the premium. *Id.*

At trial, King testified that he did not pay the additional premiums because the six subcontractors were independent contractors and he was not required to maintain workers' compensation coverage for them. *Id.* at *3. The trial court determined that King's workers were independent contractors. *Id.* at *4. However, it noted that because the issue was not clear-cut, "it would have taken a lawsuit to establish the true status of the workers." *Id.* The court concluded that CNA would have been required to defend such a suit, and that the suit could have gone either way with regard to the workers' status. *Id.* The trial court concluded that the workers presented a risk of loss to CNA during the policy period, he was liable to CNA for the retrospective premium. *Id.* King appealed.

On appeal, King argued that he should not have been forced to pay the premiums because the evidence clearly established that the six workers were independent contractors, not employees. CNA argued that, had one of the workers filed a workers' compensation claim against King during the policy period, it would have been required by its contract to defend it and would have had the burden of proving that the worker was an independent contractor rather than an employee. *Id.* at *7-8 (citing *Galloway*, 822 S.W.2d at 586). The appellate court agreed with CNA and concluded that because CNA undertook the risk of defending King in a workers' compensation lawsuit, it was justified in charging King a premium for the workers. *Id.* at *10.

Later, in *Hartford Underwriters Insurance Co. v. Penney*, this Court was presented with a similar situation. *Hartford Underwriters Ins. Co. v. Penney*, No. E2009-01330-COA-R3-CV, 2010 WL 2432058, (Tenn. Ct. App. June 17, 2010). In that case, the insured employer ("Penney") was a homebuilder who obtained workers' compensation for himself through Hartford Underwriters Insurance Company ("Hartford"). *Id.* at *1. Like Theraco's

policies, Penney's policy with Hartford provided for a retrospective determination of premiums owed after the expiration of the policy period. *Id.* at *1-2. Also, like Theraco's policies, Penney's policy provided that he would be charged premiums for individuals who could be included in its Employee Provision or its Risk of Loss provision. *Id.* at *1.

Hartford requested that Penney complete a "Contractor's Questionnaire," to complete its underwriting file and expedite its post-policy audit of Penney's business. *Id.* at *2. Penney did not return the questionnaire. *Id.* During the policy period, Penney used three subcontractors in the construction of a home. *Id.* at *1. Those workers each signed I-18 forms, swearing that they did not seek coverage under Penney's workers' compensation policy. *Id.* Believing the workers to be independent contractors, Penney did not pay workers' compensation insurance premium for them. *Id.* When Hartford conducted its audit, it determined that premiums were due for the three workers and assessed Penney an additional premium of $12,316. *Id.* at *3. Penney refused to pay, and Hartford filed a lawsuit to collect the premium. *Id.*

At trial, Penney testified that he did not pay the additional premiums because the three subcontractors were independent contractors and he was not required to maintain workers' compensation coverage for them. *Id.* at *3. The trial court observed that based on the facts, it was a close case, but concluded that the workers were Penney's employees and he was therefore liable for paying their premiums. *Id.* at *4 (citation omitted). *Id.* Penney appealed.

On appeal, Penney argued that he should not be liable for premiums for the three workers because the evidence proved that they were independent contractors, not employees. In support of his argument, he contended that the trial court did not give adequate consideration to the I-18 forms each of the workers had signed. *Id.* at *6. The appellate court discussed the effect of the forms, but ultimately determined that they had limited the bearing on employment status determinations. *Id.* at *7 (citations omitted). Notably, however, the court observed that applying *King* made determination of the workers' status irrelevant. *Id.* at *8. Borrowing the reasoning of *King*, the court noted that even if Penney's workers were independent contractors, if one of them had filed a claim after an injury on the job, the insurance company would be required to defend against it, even if only to litigate the worker's status. *Id.* at *9. Thus, the court concluded that Hartford was justified in including the payroll of the workers in determining Penney's premium. *Id.*

The facts of *King* and *Penney* are clearly similar to those in the present case. In both cases, the contracts between the insurance companies and the insureds contained relevant provisions identical to the ones in the 2008 CNA Policy and the Travelers Policy. Each policy provided that a premium would be charged for individuals who were employees or presented a risk of loss. *See Hartford Underwriters Ins. Co. v. Penney*, No. E2009–01330-

COA-R3-CV,2010 WL 2432058, at *1 (Tenn. Ct. App. June 17, 2010); *CNA (Continental Casualty) v. King*, No. M2004-02911-COA-R3-CV, 2006 WL 2792159, at *1 (Tenn. Ct. App. Sept. 28, 2006). In both *King* and *Penney*, the court determined that, regardless of the workers' classification as independent contractors, the insurance companies in those cases assumed the risk that they would have to defend the employers in workers' compensation lawsuits filed during the policy periods.

Despite the similarities, the trial court concluded that *King* and *Penney* were distinguishable from this case because both cases dealt with Tennessee Code Annotated section 50-6-113, which expands workers' compensation liability in certain situations. Generally, an employer-employee relationship is a primary requirement for an employer to be found liable for workers' compensation benefits. *Murray v. Goodyear Tire & Rubber Co.*, 46 S.W.3d 171, 175 (Tenn. 2001). However, Tennessee Code Annotated section 50-6-113 provides that an employer may be held liable for injuries sustained by employees of his subcontractors, even where the subcontractors are deemed to be independent contractors. *Id.* In pertinent part, the section provides,

> (a) A principal or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal, intermediate contractor, or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer.

Tenn. Code Ann. § 50-6-113(a) (2008 & Supp. 2013). In effect, the statute creates "statutory employees" in situations where an injured worker cannot recover compensation from an immediate employer. *Murray*, 46 S.W.3d at 175. The purpose of the statute is to protect employees from irresponsible subcontractors. *Brown v. Canterbury Corp.*, 844 S.W.2d 134, 136 (Tenn. 1992). Neither party here contends that the PTs in this case are statutory employees. Instead, they argue over the applicability of *King* and *Penney* to this case in light of the distinction. Theraco contends that reasoning of the cases cannot be applied in this case because the statute would not apply here to extend Theraco's liability. CNA and Travelers contend that the reasoning of *King* and *Penney* is instructive regardless of the statute's application.

The trial court held that *King* and *Penney* are distinguishable from this case because the PTs could not be considered statutory employees and therefore presented no expanded risk to Theraco on that basis. Essentially, the trial court ruled that the Risk of Loss Provisions of the 2008 CNA Policy and Travelers Policy only apply where the workers in question could be statutory employees. That argument is bolstered by a statement of the court in *King*. Regarding the Risk of Loss provision in King's contract with CNA, the court

-15-

in *King* stated that "[o]bviously, this language was included because of the statutory employer liability established in Tenn. Code Ann. § 50-6-113." *King*, 2006 WL 2792159, at *6. Though that observation indicates that the risk of a worker being found to be a statutory employee is necessary to take advantage of the Risk of Loss Provision, the court's later statement that, "[i]f any of the workers had been injured on the job, they could have submitted a claim for workers' compensation that Mr. King would have had to answer *as the arguable employer or statutory employer* of those workers," appears to indicate that the risk of litigating a worker's status as a regular employer is sufficient to invoke the Risk of Loss Provision. *Id.* at *10 (emphasis added).

In support of their argument, CNA and Travelers rely on *American Zurich Insurance Co. v. MVT Services, Inc.*, which was decided shortly after the trial court's decision in this case. *American Zurich Ins. Co. v. MVT Serv., Inc.*, No. M2011-01266-COA-R3-CV, 2012 WL 3064650 (Tenn. Ct. App. Jul. 27, 2012). In that case, the insured, MVT, provided transportation services over a broad geographic area throughout North America. *Id.* at *1. After expanding its operations into Tennessee in 2003, MVT was required to maintain workers' compensation insurance for its Tennessee employees. *Id.* To meet that requirement, MVT purchased a workers' compensation policy from American Zurich Insurance Company ("Zurich"). Like Theraco's policy, MVT's policy with Zurich provided for a retrospective determination of premiums owed after the expiration of the policy period. *Id.* at *2. Like the other policies we have discussed, MVT's policy with Zurich provided that MVT would be charged premiums for individuals who could be included in its Employee Provision or its Risk of Loss provision." *Id.*

During the policy period, MVT employed clerical workers, a fleet manager, and a mechanic in Tennessee, as well as roughly 143 drivers who resided in Tennessee but handled long distance hauls across state lines for long periods of time. *Id.* at *1. MVT claimed that the Tennessee drivers were Texas employees whose payrolls were not relevant to calculating its premium. In support of their contention, MVT showed that the drivers were hired from a Texas office, their paychecks were generated in Texas, their assignments came from Texas, their job required travel to several states, and they attended orientation in Texas. *Id.* at *3. The drivers were also informed that they were not covered by the Zurich policy and were considered Texas employees. *Id.* Still, Zurich classified the drivers as Tennessee employees because, without driving logs for the drivers, their guidelines required classification based on the drivers' state of residence. *Id.* at *6. After including the payrolls of the drivers to determine MVT's premium basis, Zurich billed MVT for $328,341 in unpaid premiums. *Id.* MVT refused to pay, and Zurich filed a lawsuit to collect the premium. *Id.*

After the trial court upheld Zurich's premium calculation, MVT appealed to this Court. *Id.* at *9-10. The court began by noting that *King* and *Penney* addressed similar

situations. *Id.* at *12. After briefly summarizing *King* and *Penney*, the court observed that each case emphasized that, "where the insurance company was exposed to risk of defending a workers' compensation lawsuit filed by a worker, even if only to litigate the worker's status, the assessment of retroactive premiums was warranted under the insurance contract." *Id.* at *14 (citations omitted).

Turning to the facts of the case, the court noted that it was undisputed that the drivers at issue all lived in Tennessee and their employment necessitated that at least some of their work was performed in Tennessee. *Id.* at *17. Without MVT's driving logs, Zurich had no choice but to conclude that it "could" be liable to MVT's drivers. *Id.* Following the precedent of *King* and *Penney* and interpreting a contract identical to the one at issue here, the *MVT* court held that MVT was liable for paying premiums for the drivers because it had put Zurich at risk of being required to defend a claim filed by one of the drivers, even if only to litigate his status as a Tennessee employee. *Id.* at *18.

Notably, the *MVT* court interpreted a Risk of Loss Provision identical to the one at issue here. MVT was required to pay premiums for "[a]ll other persons engaged in work that could make us liable." *Id*. After a thorough review of *King* and *Penney*, the court did not interpret that provision as applying only to statutory employees. We agree with this interpretation of the Risk of Loss Provision. The plain language of the contract does not restrict the provision to application only where Tennessee Code Annotated section 50-6-113 might apply. If the parties had intended to impose such a restriction on the provision, they could have easily included it in the policies. The policies do not require that potential lawsuits have a reasonable chance of success. It is clear from reading the 2008 CNA Policy and the Travelers Policy that had any of the PTs been injured during the policy periods and sought workers' compensation benefits from Theraco, the insurers would have had a duty to defend the lawsuit at their expense, even if only to determine whether the PT was an employee or an independent contractor. Theraco is obligated by the policies to pay premiums for the PTs in return for shifting that risk of litigation to the insurers. Based on the foregoing, we conclude that the Department's failure to address the risk of loss basis for the premiums constitutes an error that resulted in its decision being unsupported by evidence that is substantial and material in light of the record. We therefore reverse the ruling of the trial court upholding the Department's final order and hold that Theraco is liable for retrospective premiums to CNA in the amount of $44,089 and to Travelers in the amount of $97,522.

## V. HOLDING

In light of the foregoing, we affirm the ruling of the trial court in part, reverse in part

and remand for entry of a judgment consistent with this opinion.  Costs on appeal are taxed to the Appellee, Theraco, Inc.


_____

DAVID R. FARMER, JUDGE